UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FAÏZA HARBI | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. 1:16-cv-12394-FDS |
| | * | |
| MASSACHUSETTS INSTITUTE OF TECHNOLOGY, and WALTER LEWIN | * | |
| | * | |
| | * | |
| Defendants. | * | |

## PLAINTIFF'S MOTION TO AMEND THE COMPLAINT AND FILE HER FIRST AMENDED COMPLAINT

Plaintiff moves to amend her complaint to add a claim for violation of M.G.L. c. 214 §1C, sexual harassment based upon quid pro quo and hostile educational environment, breach of contract and to assert additional facts in support of her claims of negligence based upon theory of voluntary assumption of duty.[1] On March 10, 2017, the defendants filed motions to dismiss Plaintiff's complaint seeking dismissal of plaintiff's causes of action. The plaintiff has filed oppositions to said motions, however, the plaintiff wishes to amend her complaint to ensure that she is able to present all claims for which she believes she is entitled to relief.

### I.    Fed. Rules of Civ. Proc. 15 Allows For Liberal Application of The Relation Back Doctrine

Pursuant to Fed. R. Civ. P. 15(c), the Plaintiff may move to amend her complaint and the relation back doctrine should apply. When a plaintiff seeks to add a claim against a defendant in an amended complaint, filed after the limitations period has run, the claim may still be brought and the amended complaint relates back to the original complaint. Whether an amendment relates

---

[1] The Plaintiff has attached her First Amended Complaint to this motion as <u>Exhibit A</u>. Additionally, the Plaintiff will refer to the report issued by MIT after it conducted an investigation regarding Prof. Lewin's sexual harassment of the Plaintiff. The report has been attached to the Plaintiff's First Amended Complaint

back in turn is governed by the Fed. R. Civ. P. 15(c)(1)(A-C). Under Rule 15(c)(1)(A), an amendment to a pleading relates back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back. It is clear that Massachusetts courts have accepted the relation back doctrine.

Thus, in effect Rule, 15(c)(1)(A) "cements in place a one-way ratchet; less restrictive state relation back rules will displace federal relation back rules, the more restrictive state relation back rules will not." See *Abernathy v. Dewey* 196 F. Supp. 3d 157, 165-66 (D. Mass. 2016). Ms. Harbi is seeking to amend her complaint to add claims alleging a violation of M.G.L. c. 214 §1C, breach of contract and to allege additional facts in support of her claims. Whether these newly stated claims relate back is an issue controlled by Massachusetts law. Similarly, pursuant to Fed. R. Civ. P. Rule 15(c)(1)(B) the relation back doctrine applies if the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out or attempted to be set out in the original pleading. Here, there can be no dispute that the plaintiff has alleged sufficient facts in the original complaint alleging sexual harassment based upon a quid pro quo and hostile environment that had the effect of interfering with the Plaintiff's education due to the intimidating, hostile, humiliating and sexually offensive conduct by MIT and Prof. Lewin. In fact, the MIT investigative report referred to in the Plaintiff's original complaint concluded that MIT did in fact find that Prof. Lewin engaged in sexual harassment in quid pro quo exchange for successful completion of the course material by Ms. Harbi thereby creating a hostile environment. Here, the proposed state law claim for sexual harassment under M.G.L. c. 214 §1C against MIT unquestionably arose out of the same conduct, transaction or occurrence set forth in the original complaint. Thus, the proposed state law claim relates back under Massachusetts and Federal law, because the plaintiff in this action filed her original complaint within the three-year statute of limitations. Pursuant to the

relation back doctrine, the addition of Ms. Harbi's new claims are not untimely. Similarly, to the extent that an amended complaint amplifies the legal theories and the applicable federal and state law under which a plaintiff is proceeding, an amendment to an existing complaint is considered a technical correction that clarifies the legal theories and statutes relied upon by a plaintiff. Accordingly, an amended complaint relates back to the date the original complaint was filed and is not time-barred provided the criteria set forth in rule 15 (c)(1)(A) or B are met. See *In re Art & Co.*, 179 B.R. 757, 764-64 (Bankr. D. Mass. 1995). In applying the relation back doctrine test, the critical inquiry is whether adequate notice of the matters raised in the amended pleading have been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading. See *Quack v. Ataxia,* S. A., 445 F. Supp. 2d 130, 136-37, (D. Mass. 2006). This rule is generally construed liberally so long as the defendant has not been prejudiced by the amendment. Here, it cannot be said MIT will be prejudiced by the amendment because at all relevant times it was on notice that the Plaintiff was alleging claims for sexual harassment, as MIT concluded in its own report.

    **II.**    **M.G.L. C. 214 §1C Renders MIT Strictly Vicariously Liable For Sexual Harassment By Prof. Lewin**

In the case of *Doe v. Bradshaw*, the court considered a claim brought by a female student against a town, school committee and various school officials, alleging inter alia, that the officials failed to protect her from sexual abuse by a soccer coach. In ruling on a motion for summary judgment, Judge Woodlock undertook a careful analysis of the state of Massachusetts law as it existed in August, 2016. Specifically, the plaintiff in that case asserted that she was entitled to the right to freedom from sexual harassment pursuant to M.G.L. c. 214 §1C because the law prohibits sexual harassment of any type in an educational setting. In analyzing the correlation between

M.G.L. c. 214 §1C and M.G.L. c. 151C, the court concluded that sexual harassment in the educational context is defined by M.G.L. c. 151C §1(e). Moreover, the court concluded that such conduct may include both the quid pro quo and hostile environment forms of sexual harassment. Such claims are defined as any sexual advances or requests for sexual favors and other verbal or physical conduct of a sexual nature when (1) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement and serves as a basis for the evaluation of academic achievement; or (2) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment. According to Judge Woodlock, c. 214 §1C merely expanded who was protected by c. 151C and the remedies available to them, while c. 151C remains the source of the substantive law. Therefore, according to Judge Woodlock suit may be brought under c. 214 only against educational institutions and not individuals based on the limitations rooted in c. 151C. *Doe v. Bradshaw*, 2016 U.S. Dist. LEXIS 114748, at *47 (D. Mass. 2016) (citing *Doe v. Town of Stoughton,* 2013 WL 6498959 at *5 (D. Mass. Dec. 10, 2013); *Doe v Fournier,* 851 F. Supp. 2d 207, 218 (D. Mass. 2012).

In *Doe v. Bradshaw*, the plaintiff asserted that c. 214 §1C confers strict vicarious liability on an educational institution, for sexual harassment by any employee vested with authority to care for and to supervise students. The defendant countered claiming that the deliberate indifference standard governing Title IX cases should govern the Plaintiff's burden of proof. There is no dispute in the present case, as confirmed by the investigative report of MIT, that Harbi was a student and that Prof. Lewin at all relevant times was engaged with her during the online course in his official role as a professor for MIT. Similarly, there can be no dispute that under the policies

and procedures of MIT, MIT and Prof. Lewin contractually and voluntarily assumed the responsibilities and duties in those policies and procedures against sexual harassment and that they were obligated by law and as a result of that assumption of duty, to comply with those policies and procedures. At the time of Judge Woodlock's decision, the Massachusetts Appeals Court had expressly reserved the issue of whether c. 151C claims require that the school administrators have some knowledge of the harassment. Accordingly, Judge Woodlock confirmed that because there was no authority stating that knowledge of the misconduct was a necessary element for recovery under c. 151C, it was clear that the text of c. 151C declares that it is an unfair educational practice for an educational institution to sexually harass students <u>in any program or course of study</u> (emphasis added). As the court found, with many Massachusetts laws, the legislative history of the statute does not clarify the legislature's intent. The court also examined the different elemental requirements between claims based on strict liability and deliberate indifference and concluded that in the absence of state law on which to rely, a federal court must do its best to determine how the state courts would rule on such issues. Applying this standard, Judge Woodlock determined that the standard the state court would apply for a claim of sexual harassment based upon a quid pro quo or hostile educational environment theory would be a strict liability standard and concluded that under the strict vicarious liability standard, an educational institution may be held strictly liable for the teacher's sexual harassment of a student pursuant to M.G.L. c. 214 §1C.[2]

### III. MIT And Prof. Lewin Contractually and Voluntarily Assumed A Duty Of Care To Protect Ms. Harbi Against Sexual Harassment

---

[2] Because the state of the current law does not hold the individual teacher liable under c. 214 §1C, in the event Massachusetts Appellate courts hold otherwise the Plaintiff reserves the right to amend her complaint to assert a claim for violation of M.G.L. c. 214 §1C against Prof. Lewin individually.

Prof. Lewin and MIT assumed a duty of care to ensure students participating in Prof. Lewin's online course would be treated the same as students in MIT classrooms. In the matter of *Cottam v. CVS Pharmacy,* 436 Mass. 316, 323 (2002), the Mass. Supreme Judicial Court reconfirmed that Mass. Law recognizes the theory of assumption of duty. Any person or entity may voluntary assume a duty to another and if assumed, the person must fulfill their duty by acting in a reasonable manner. A claim based upon a voluntary assumption of duty need not be a separate cause of action and can be alleged within a claim of negligence. Additionally, the inquiry defining the scope of the duty is a fact-specific inquiry thereby arguably precluding such a claim from being dismissed on a motion to dismiss.   Moreover, courts have held that there is a duty of care owed by a college or university to their students due to their unique relationship.   *Leader v. Harvard University Board of Overseers,* 2017 U.S. Dist. WL 1064160, at * 5 (D. Mass. March 17, 2017).   These duties "arise out of special relations between the parties, which create a special responsibility, and take the case out of the general rule."   *Leader,* 2017 U.S. Dist. WL 1064160, at *5.   In the instant case, it is undeniable that Prof. Lewin and MIT both voluntarily and contractually assumed a duty of care as it relates to ensuring that students are not subjected to sexual harassment. This duty is not only statutorily imposed by law under M.G.L. c. 214 §1C but it was also incorporated in MIT's policies and procedures which were applicable to Prof. Lewin and is created through a special relationship under Restatement (Second) of Torts § 314A. MIT had policies and procedures in place prohibiting sexual harassment of students by teachers and the development of personal sexual relationships. As an educational institution, MIT required its staff, including Prof. Lewin, to follow these policies and procedures in dealing with its student body including students enrolled in MIT online courses. Here, MIT promulgated policies and

procedures and Prof Lewin voluntarily and contractually agreed to be bound by MIT's policies and procedures and therefore had a duty to act reasonably in his interactions with Ms. Harbi.

Moreover, because Prof. Lewin alleged that his intended motivation for his conduct was to help Ms. Harbi with her perceived sexual inadequacy, he not only assumed the duty to help her psychologically, but also had a duty to act reasonably under the circumstances. Here, where Prof. Lewin has asserted he wanted to help Ms. Harbi through his twisted concept of therapy, such an issue raises a question of negligence on his part and whether he acted negligently in the performance of his asserted duty of care to the Plaintiff. For these reasons, the Plaintiff requests that she be allowed to amend her complaint to include factual allegations supporting a theory of voluntary assumption of duty as part of her negligence claim against MIT and Prof. Lewin.

### IV. Contracts Between Students And Educational Institutions Can Arise From The Student-College Relationship

Ms. Harbi applied for access to the MIT online course offered by MIT to be taught by Prof. Lewin and if completed successfully, MIT would issue a certificate of mastery for a fee to be paid by the student. Courts have held that a contractual relationship can arise from a student's enrollment in an educational environment whereby the school offers some educational benefit to the student.   See *Bloomer v. Becker College*, 2010 U.S. Dist. LEXIS 82997, at *29 (D. Mass. Aug. 13, 2010).

The terms of such a contract can be derived from statements provided in student manuals, registration materials, brochures, policy manuals and advertisements. Ms. Harbi discovered MIT's online course through advertisements on the internet promulgated by MIT offering a certificate of mastery. Moreover, according to MIT's report, Ms. Harbi as an online student was to be treated as any other student enrolled in MIT courses whether on or off campus and was to be offered the

same legal rights against sexual harassment as students attending MIT's campus courses. Courts have also concluded that when examining the terms of such contracts, the standard to be applied is that of a reasonable expectation – what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.   *Id*.

MIT should have reasonably expected that Ms. Harbi desired to receive an educational benefit from her involvement in the online course, which if she completed successfully would earn her an MIT certificate of mastery. MIT promoted its program and offered to educate students willing to participate in their programs as a means of advertising its online courses and enhancing its own reputation.

The terms of the contract between MIT and Ms. Harbi included MIT's policies and procedures prohibiting sexual harassment of students by its teachers. Once Prof. Lewin engaged in sexual harassment of Ms. Harbi, he effectively caused a breach of the contract resulting in Ms. Harbi's loss of the educational opportunity offered by MIT as part of their contract. For these reasons, the Plaintiff should be permitted to amend her complaint to add a breach of contract claim.

                Respectfully Submitted,

                The Plaintiff,
                By His Attorney,

                */s/ David P. Angueira*
                David P. Angueira, BBO #019610
                Swartz & Swartz, P.C.
                10 Marshall Street
                Boston, MA 02108
                Tel: (617) 742-1900
                Fax: (617) 367-7193
                dangueira@swartzlaw.com

**CERTIFICATE OF SERVICE**

I, David P. Angueira, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 6th day of April 2017.

>*/s/ David P. Angueira*
>David P. Angueira, Esq.