UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FAÏZA HARBI | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO. 1:16-cv-12394- |
| | * | FDS |
| MASSACHUSETTS INSTITUTE OF | * | |
| TECHNOLOGY, and WALTER LEWIN | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFF, FAIZA HARBI'S, OPPOSITION TO DEFENDANT, MASSACHUSETTS
INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS**

**I.      FACTUAL BACKGROUND**

In August 2013, Ms. Harbi enrolled in the EDX 'For The Love Of Physics' course (8.01X)
taught by Mr. Lewin and promulgated and/or sponsored by "MIT". The class began in September,
2013.  *Complaint*, ¶ 6.  Ms. Harbi decided to take the course due to her love of learning and to also
obtain a Certificate of Mastery from Professor Lewin due to his association with "MIT" and his
perceived reputation.  *Complaint*, ¶ 7.

Many EDX courses had a Facebook page where students can assist each other with
assignments.  *Complaint*, ¶ 8.  Because 'For The Love of Physics' did not have a page, Ms. Harbi
created one.  *Id*.  This was a closed group and students had to apply to join.  *Id*.  Ms. Harbi and the
other administrators could either accept or decline the request as well as ban users from the group.
*Id*.  On November 24, 2013, Mr. Lewin requested to join the Facebook group.  *Complaint*, ¶ 9.

Thereafter, Ms. Harbi disclosed to Mr. Lewin that her concentration in class may be
affected by her medication, to which Mr. Lewin inappropriately responded with "what medication
do you take and why?"  *Complaint*, ¶ 10.  In another email shortly thereafter, Mr. Lewin asked
"what happened that caused your depression, to which Ms. Harbi responded by detailing her

history of being the victim of an abusive upbringing.  *Complaint*, ¶ 11.  Mr. Lewin responded to

Ms. Harbi's detailed description of her past abuses with sexually explicit terminology, which was

just the beginning of numerous inappropriate emails and messages between him and Ms. Harbi.

*Complaint*, ¶ 12.

Approximately three weeks after this initial contact, Ms. Harbi received a friend request

from Mr. Lewin on Facebook.  *Complaint*, ¶ 13.  Ms. Harbi" and Mr. Lewin then began

communicating by private messenger and eventually began messaging on Skype as well.  *Id*.

Upon becoming Facebook friends with Ms. Harbi, Mr. Lewin explicitly suggested to Ms. Harbi

that becoming friends will help her to regain self confidence and also implied success in his

classes suggesting a quid pro quo relationship for success in his class.  *Complaint*, ¶ 14.

In early December 2013, the conversations between Ms. Harbi and Mr. Lewin turned even

more explicit, with Mr. Lewin disclosing to her that he "wanted her body in a sexual way."

*Complaint*, ¶ 15.  Ms. Harbi then explicitly stated to Mr. Lewin that she does not feel the same

way about him.  *Id*.  Mr. Lewin continued to improperly influence and sexually harass Ms. Harbi

online throughout her time as a student in the "MIT" EDX course, again implying that her success

with the class could be affected by her relationship with Mr. Lewin.  *Complaint*, ¶ 16.  Throughout

the subsequent months, "Harbi" did not break contact with Mr. Lewin for fear of being removed

from the EDX course.  *Complaint*, ¶ 17.  This fear stemmed in part from her past abuse.  *Id*.  In an

attempt to end Mr. Lewin's persistent requests and continue with her education, Ms. Harbi sent

him revealing photographs.  *Id*.  At all relevant times Ms. Harbi believed that Mr. Lewin was

acting as an "MIT" professor and her completed class performance could be documented on a

professional resume as an "MIT" affiliated course.  *Id*.

Ms. Harbi and Mr. Lewin also communicated via Skype video sessions during which Mr.

Lewin performed sexually explicit acts including exposing his genitalia and masturbating. *Complaint*, ¶ 18.  Additionally, Mr. Lewin sent Ms. Harbi nude photographs on multiple occasions, some of which were sent through his "MIT" email furthering confirming his association with "MIT".  *Id*.  Mr. Lewin used his "MIT" email to send not only explicit images, but highly inappropriate written messages that, at all times relevant, were sent through the "MIT" email server.  *Complaint*, ¶ 19.

In August 2014, upon realizing that the online sexual activity instigated by Mr. Lewin was highly inappropriate, Ms. Harbi began to self-mutilate and was hospitalized.  *Complaint*, ¶ 20. Mr. Lewin's online manipulation and sexual harassment seriously and profoundly exacerbated Ms. Harbi's symptoms.  *Complaint*, ¶ 22.  Mr. Lewin improperly used his association with "MIT" and his position to induce Ms. Harbi to engage in an inappropriate relationship with his student in exchange for her perceived belief that her academic performance was dependent on Mr. Lewin. *Id*.

On October 7, 2014, Ms. Harbi reported Mr. Lewin's conduct to "MIT" and also began seeing a survival counselor.  *Complaint*, ¶ 23.  "MIT" conducted an investigation and on December 2, 2014, informed Ms. Harbi of the results.  *Complaint*, ¶ 24.  "MIT" ultimately found that Mr. Lewin's conduct "violated "MIT's" Policies and Procedures, including Sections 9.5 Policy on Harassment, 4.4 Conflict of Interest, 9.1 Personal Conduct and Responsibilities Towards Students and Employees, and 9.7 Relations with Students and Student Conduct."  *Complaint*, ¶ 25 (See MIT's Investigation report attached as Exhibit A of Plaintiff's First Amended Complaint). The investigation also brought to light that this was not the first instance of sexual harassment perpetrated by Mr. Lewin.  *Complaint*, ¶ 29.

In response to Ms. Harbi's complaints, "MIT" simply severed ties with Mr. Lewin and prohibited him from accessing "MIT" resources.  *Complaint*, ¶ 27.  Nothing else was done by

"MIT" to assist Ms. Harbi with the harm Mr. Lewin and "MIT" had caused her.  *Id.*   In the investigation report, "MIT" did not indicate that it would initiate any type of counseling for Ms. Harbi or additional training sessions for their instructors, employees, staff or students to educate them on sexual abuse on campus and in online course work.  *Complaint*, ¶ 28.

## II.   STANDARD OF REVIEW

In order to survive a motion to dismiss, the complaint must contain sufficient facts which, if accepted as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although evaluating the plausibility of a legal claim "requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679, the court may not disregard properly pled factual allegations even if "it strikes a savvy judge that actual proof of those facts is improbable." *Twombly,* 550 U.S. at 556.  Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits—"a well-pleaded complaint may proceed even if . . . 'a recovery is very remote and unlikely.'"  *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)).  The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint.  Courts have also held that a high degree of factual specificity is not required at the pleading stage.  *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 517 (2016).  At this stage, the Plaintiff's complaint, together with the referenced documents, satisfy's the pleading requirements and sets forth sufficient facts to show a plausible claim for relief.

## III.   ARGUMENT

### A.   Plaintiffs Title IX Claim Should Not Be Dismissed As Plaintiff Does Not Lack Statutory Standing Under Title IX

When a plaintiff alleges injury to rights conferred by a statute, there are two separate standing-related inquiries that are pertinent: whether the plaintiff has Article III standing

(constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing). *Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012). Statutory standing specifically asks the question whether the statute gives that plaintiff authority to sue. *Merriam v. Demoulas*, 2013 U.S. Dist. LEXIS 77600, at *13 (D. Mass. June 3, 2013). In determining if a statute gives a Plaintiff authority to sue, the court should look to the language of the statute, its legislative history and administrative interpretations. *Phillips v. St. George's Univ*., 2007 U.S. Dist. LEXIS 84674, at * 11 (E.D.N.Y. Nov. 15, 2007).

In arguing that Plaintiffs Title IX claim should be dismissed, Defendant erroneously only focuses on Title IX's language "no person *in the United States*" to argue that Plaintiff does not have statutory standing to sue. To support their argument that Plaintiff does not have statutory standing, Defendant highlights *King v. Bd. Of Control*, 221 F.Supp.2d 783 (2002) but fails to acknowledge that this case provides direct support that Plaintiff does in fact have statutory standing under Title IX. In *King*, the court held that Title IX protections did extend to students outside of the United States who were studying in South Africa as a part of the Universities study abroad program. *Id*. at 784. The court specifically held that Title IX in broad language, is not limited by any exception for study abroad programs, and sweeps within its scope **every single** university education program. *Id*. at 788. While Defendant merely focuses on the fact that Ms. Harbi resided in France and did not participate in an educational program in the United States to support their argument that Plaintiff does not have statutory standing, *King* clearly illustrates that Title IX takes within its scope every single university education program, including MIT's online program. Moreover, MIT's own school policies provide further support for Plaintiff's claim that Title IX protections not only apply to conduct that occurs on MIT's campus but also extends to students taking one of MIT's online courses. Plaintiff's position is the same whether the student

5

taking an online course is within the United States or in a foreign country.  As articulated in MIT's report, MIT's policies and procedures state that as a student in a virtual course offered through MIT's online educational platform, Ms. Harbi deserved the same respectful treatment and common decencies that are encouraged and fostered by MIT's policies for all members of the MIT community and that are afforded to those students who attend classes on MIT's campus.  MIT's policy that students shall receive equal treatment whether they are taking a course offered online or on MIT's campus is in direct contradiction to MIT's argument that Ms. Harbi does not have standing under Title IX simply because she is a student from France taking one of MIT's online courses and thus MIT should be estopped from making that argument.  Given the fact that Title IX provides protection to every single university program and that MIT's policies call for equal treatment of students regardless of whether their course is offered on campus or online, Plaintiff has plead facts sufficient to show that Plaintiff does have standing to sue under Title IX and MIT should be estopped from asserting otherwise.  Moreover, by offering such online courses MIT voluntarily assumed all duties and responsibility attendant to such conduct.  As its report indicates MIT's policies were to treat all students the same whether they are sitting in a classroom on MIT's campus or studying on line.

### B. Plaintiffs Title IX Claim Should Not Be Dismissed As Plaintiff Has Alleged Sufficient Facts That MIT Knew Or Should Have Known About Mr. Lewin's Conduct And That MIT Acted With Deliberate Indifference

In order to establish a claim under Title IX, a Plaintiff must allege facts sufficient to prove: (1) she was subjected to harassment severe enough to compromise her educational opportunities; (2) that the educational institution had knowledge of the harassment; and (3) that the institution exhibited deliberate indifference to the harassment.  *Wills v. Brown Univ.,* 184 F.3d 20, 26 (1st Cir. 1999).  In regards to the knowledge that educational institutions must have, most courts have

stated that the actual notice standard does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse. *See Doe v. Derby,* 451 F.Supp.2d 438, 446 (D. Conn. 2006). In order to satisfy the deliberate indifference standard, a Plaintiff must plead facts sufficient to support a finding that a school acted in violation of Title IX requirements through grossly inadequate action or no action at all, resulting in sex discrimination against the student. *Hunter v. Barnstable Sch. Comm.*, 456 F.Supp.2d 255, 265 (2006).

In arguing that Plaintiffs Title IX claim should be dismissed, Defendant erroneously claims that Plaintiff has not alleged that MIT had any knowledge of Mr. Lewin's alleged misconduct towards Ms. Harbi before she reported it to MIT on October 7, 2014. While Defendant specifically argues that Plaintiff has merely offered a conclusory allegation that MIT "knew or should have known" that Mr. Lewin was engaged in inappropriate conduct towards Ms. Harbi, Defendant ignores that Plaintiff has plead that many of the emails that were sent from Mr. Lewin to Ms. Harbi were sent from Mr. Lewin's MIT email account through MIT's server. In an online classroom context specifically, MIT should have been monitoring Mr. Lewin's MIT email account to ensure that every students right to freedom from sexual harassment under Mass. Gen. Laws ch. 214 § 1C was being protected.[1] Not only should MIT have been monitoring Mr. Lewin's MIT email account, but it is well established law that they had the authority to do so as once Mr. Lewin sent sexually explicit emails through his MIT email account, any reasonable expectation of privacy that Mr. Lewin had in his emails was lost. *See Falmouth Fire Fighters' Union Local 1497 v. Town of Falmouth*, 2011 Mass. Super LEXIS 362, at *8. Given the fact that MIT should have been monitoring the communications that Mr. Lewin sent using his MIT email account, it

---

[1] The Plaintiff has filed a motion to amend her complaint to assert a claim for violation of Mass. Gen. Laws ch. 214 § 1C which provides for strict vicarious liability against MIT. See *Doe v. Bradshaw*, 2016 U.S. LEXIS 114748, at *47 (D. Mass. 2016).

necessarily follows that MIT should have known that Mr. Lewin was engaged in inappropriate communications with Ms. Harbi prior to Ms. Harbi reporting it on October 7, 2014, had they been monitoring these matters.

Defendant further erroneously claims that Plaintiffs Title IX claim should be dismissed because plaintiff did not make factual allegations that MIT had prior notice of sexual harassment allegedly perpetrated by Professor Lewin against others.  While Defendant asserts that Plaintiff merely states that this was not the first instance of online sexual harassment perpetrated by Mr. Lewin towards students in his online course without providing facts to support this claim, Defendant ignores Mr. Lewin's own admissions that he has in fact engaged in this type of behavior before.  Specifically, in MIT's report, Mr. Lewin stated, "I had done that before through Facebook. I taught another woman how to masturbate, and she learned she could do it."  Mr. Lewin further acknowledged that he has sent sexually explicit pictures to someone else (Woman A) "probably this year-very recently."  Mr. Lewin also stated that he sent "a different picture at a different time" to another woman (Woman B), and also exchanged pornographic images 'back and forth" with her on Facebook.  In response to Mr. Lewin's disclosure that he had engaged in sexually explicit conversations and sent sexually explicit pictures to other women, MIT merely asked Mr. Lewin whether Woman A and Woman B were adults, meaning over the age of 18.  The MIT report does not indicate whether MIT inquired further in an attempt to determine if these other women were students in Mr. Lewin's online course or whether he did this to students in classrooms.  In fact, Mr. Lewin admitted that if he was presented with the same circumstance he experienced with Ms. Harbi in a classroom setting, he would have done the same thing.  Due to this glaring failure to inquire, discovery is needed in this case in order to determine if MIT already knew about these communications and if they knew that the other women receiving inappropriate

communications and pictures from Mr. Lewin were students in Mr. Lewin's online courses or

classroom.  Given the need for discovery on the exact knowledge that MIT had of Mr. Lewin's

inappropriate communications with other women, Plaintiffs Title IX claim should not be

dismissed due to a lack of knowledge on the part of MIT.  Moreover, an inference can be drawn

that MIT's silence on these issues warrants further investigation.

   In considering the scope of the actual knowledge requirement in Title IX cases, some

courts have concluded that in a Title IX claim actual knowledge of discrimination can take the

form of knowledge about the alleged harasser's conduct towards others which indicates some

degree of risk that the harasser would subject the plaintiff to similar treatment.  See *Bloomer v.*

*Becker College*, 2010 U.S. Dist. LEXIS 82997, at *13 (D. Mass. Aug. 13, 2010). Stated another

way, the notice standard does not require that the offending instructor actually commit previous

acts of harassment against the student and that the student complained before the institution may

be held liable for the instructor's subsequent repeated misconduct under Title IX. The actual

notice standard can be met when an appropriate official has actual knowledge of a substantial risk

of abuse to students based on prior complaints by other students.  *Bloomer*, 2010 U.S. Dist. LEXIS

82997, at *14.  In the instant case, the MIT report and Lewin's admissions indentify several other

instances of inappropriate conduct between Lewin and other women.  Unfortunately, the report

does not reveal whether these women were also students or whether MIT was aware of other

complaints.  This glaring omission is highly suspect in light of the alleged thorough investigation

MIT is required to conduct under Title IX.

   The expectation on the part of the teacher that the student will submit to the unwelcome

sexual advances in exchange for favorable treatment in an educational program may be explicit or

implicit. *Bloomer*, 2010 U.S. Dist. LEXIS 82997, at *16.  In the present case Ms. Harbi has

alleged sufficient facts to show that her submission to Lewin's unwelcome sexual advances were tied to her success to the privileges of participating in the online MIT course. Moreover, Mr. Lewin confirmed that he would guarantee her success in the course implying that their special relationship would ensure success.  A reasonable inference can be drawn at this stage of the proceeding that Ms. Harbi tolerated Lewin's ongoing harassment in order to receive the full benefits of her education in conjunction with the MIT online course program. Such allegations are sufficient to state a claim for quid pro quo harassment under Title IX and a hostile educational environment.  *Bloomer*, 2010 U.S. Dist. LEXIS 82997, at *17.

In supporting their argument that Plaintiffs Title IX claim should be dismissed, Defendant relied on case law that is not analogous to the instant case to argue that Defendant did not act with deliberate indifference to Ms. Harbi's complaint.  Defendant specifically refers to *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007), where the court found that a school did not act with deliberate indifference when upon learning of a student's harassment on a school bus the school reacted promptly to the complaint, commenced a full-scale and diligent investigation and offered the student suitable remedial measures (emphasis added).  In arguing that this case provides sufficient evidence that Defendant did not act with deliberate indifference to Ms. Harbi's complaint, Defendant ignores that MIT did not in fact conduct a full-scale and diligent investigation of Ms. Harbi's complaint, did not offer any suitable remedial measures to Ms. Harbi, and failed to take appropriate measures to address the known issue of sexual assaults on MIT's campus.  Specifically, unlike *Fitzgerald*, where upon learning about the student's harassment on a school bus the school offered the student the remedial measure of changing her bus assignment, in the instant case, Plaintiff has sufficiently pled that MIT did nothing to assist Ms. Harbi with the harm that Mr. Lewin and MIT had caused her.  An investigation is only the beginning of a schools

response under Title IX.  The school is required to provide remedial measures including

appropriate and necessary counseling.  As a result of this incident, Ms. Harbi began to self-

mutilate and was hospitalized and there was no attempt made by MIT to assist Ms. Harbi with the

psychological harm that she was suffering nor did MIT initiate any type of additional training

sessions for their instructors or students to educate them on sexual abuse on campus and in online

course work.  Moreover, while Defendant claims that MIT conducted a prompt investigation of

Ms. Harbi's complaint and thus did not act with deliberate indifference, *Fitzgerald* highlights that

not only is a prompt investigation required but also a full-scale and diligent investigation followed

by appropriate remedial measures.  *Id*.  MIT's report created after Ms. Harbi's complaint shows

that MIT's investigation was wholly inadequate, not diligent, and incomplete.  Specifically, in

MIT's report, Mr. Lewin was extremely forthcoming with the fact that he had engaged in the same

type of inappropriate communications other women as he had with Ms. Harbi.  MIT's

investigation report admits that MIT could have pursued these other incidents, but MIT chose not

to. When Mr. Lewin made these admissions, MIT merely asked Mr. Lewin whether these other

women were adults, meaning over the age of 18.  MIT's response to Mr. Lewin's statements in

regards to sexual communications with multiple women was wholly inadequate and not diligent as

MIT did not make any attempt to determine if these communications were perpetrated against

other adult women in MIT's classroom or online courses that Mr. Lewin was teaching.  Mr. Lewin

also admitted that he would treat female students in a classroom the same way.  While discovery is

needed in this case in order to determine exactly why MIT did not prompt Mr. Lewin to reveal

more specific details about his communications with other women, this lack of inquiry at a

minimum supports an inference that MIT's investigation of Ms. Harbi's complaint was not

diligent and reasonable.  It is also possible that MIT did discover facts regarding other

inappropriate conduct between Mr. Lewin and other students and chose not to include it as part of the report.  Courts have routinely found that an institution's failure to properly investigate a claim of discrimination can be seen as indication of deliberate indifference.  *Jennings and Keller v. University of North Carolina at Chapel Hill*, F.3d 686, 694 (4th Cir. 2014).

Furthermore, MIT acted with deliberate indifference to Ms. Harbi's complaint because MIT knew through their duty to report on campus crime statistics under the Clery Act that there was a significant amount of sexual misconduct occurring at MIT yet failed to take appropriate measures to redress it.  Specifically, according to MIT's 2016 Clery Report, MIT reported that between 2013 and 2014, there were 33 instances of rape and 16 instances of fondling. The failure of MIT to take appropriate measures to redress these alarming statistics demonstrates MIT's deliberate indifference to Ms. Harbi's complaint and sexual harassment in general.  Given the fact that MIT did not conduct a full-scale and diligent investigation of Ms. Harbi's complaint, did not offer Ms. Harbi suitable remedial measures, and did not address a known campus sexual assault issue, Plaintiff has alleged facts sufficient to show that MIT acted with deliberate indifference.  In the matter of *Leader v. Harvard University Board of Overseers,* 2017 U.S. Dist. WL 1064160, at * 5 (D. Mass. March 17, 2017) the court denied Harvard's motion to dismiss Plaintiff's Title IX claim and confirmed that the mere happening of an investigation by an educational institution is insufficient to warrant dismissal of a Title IX claim.  In the present case, the Plaintiff has not only alleged inadequacy of the investigation but also MIT's failure after the reported misconduct to assist Ms. Harbi deal with the lost educational opportunity taken from her and the psychological damage she suffered.

Defendant also erroneously states that MIT did not act with deliberate indifference once they had actual notice of Mr. Lewin's sexual harassment.  Defendant, however, fails to

acknowledge that MIT did not take adequate measures to ensure that Ms. Harbi, an online student, knew of her Title IX rights. While this information may be available to students on MIT's campus, it was not equally made available to Ms. Harbi. Not only should this information have been made available to Ms. Harbi as an online student, but MIT's own policies require it as their policies state that as a student in a virtual course offered through MIT's online educational platform, Ms. Harbi deserved the same respectful treatment and common decencies that are encouraged and fostered by MIT's policies for all members of the MIT community and that are afforded to those students who attend classes on MIT's campus. Thus, MIT's failure to inform Ms. Harbi of her Title IX rights is evidence of MIT's deliberate indifference.

Finally, MIT acted with deliberate indifference because of their failure to comply with their own policies on sexual harassment and sexual harassment prevention. Courts have held that a schools violation of their own policies does not alone establish deliberate indifference, however, it can be reasonably inferred that a school violating their own policies is a factor in establishing deliberate indifference for purposes of Title IX. See *Moore v. Regents of the University of California*, 2016 WL 7048991, at * 2 (N.D. Cal. Dec, 5, 2016). Not only does case law support the notion that a school diverting from their own policies may be evidence of deliberate indifference, but MIT's own harassment guidelines require that all students be educated about these policies and that "everyone at MIT is expected to conform to MIT rules and policies." Despite this, MIT never even informed Ms. Harbi of her rights under Title IX.

      **C. Plaintiffs Negligence Claim Should Not Be Dismissed As MIT Had a Duty To Prevent Mr. Lewin From Engaging in Misconduct Reasonably Foreseeable To MIT, Had a Statutory Duty To Plaintiff, a Special Relationship Duty, and a Voluntary Assumption of Duty**

Usually, "the question of negligence is one of fact for the jury.  Only when no rational view of the evidence warrants a finding that the Defendant was negligent may the issue be taken from the jury."  *Beaver v. Costin*, 352 Mass. 624, 626 (1967) (quoting Luz v. Stop & Shop, Inc. of Peabody, 348 Mass. 198, 203-204 (1964)).  In order to prove a negligence claim a Plaintiff must show: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury.  *Jorgensen v. Massachusetts Port Auth.*, 905 F.2d 515, 522 (1st Cir. 1990).  In regards to a legal duty owed by a University, courts have held that there is a duty of care owed by a college or university to their students.  *Leader v. Harvard University Board of Overseers,* 2017 U.S. Dist. WL 1064160, at * 5 (D. Mass. March 17, 2017). Specifically, a college or university has a duty to prevent harm "only to those acts that are reasonably foreseeable."  *Kavanagh v. Trs. of Boston Univ.*, 440 Mass. 195, 203-04 (2003).  While it is generally true that "a person 'do[es] not owe others a duty to take action to rescue or protect them from conditions [h]e ha[s] not created,'" Massachusetts Law and the Restatement (Second) of Torts recognize an exception to this rule under certain circumstances.  These duties "arise out of a special relations between the parties, which create a special responsibility, and take the case out of the general rule."  *Leader,* 2017 U.S. Dist. WL 1064160, at *5.

In arguing that MIT was not negligent, Defendant erroneously claims that MIT had no legal duty to prevent Mr. Lewin from engaging in sexual harassment of students that was not reasonably foreseeable to MIT.  While Defendant claims that there is no plausible way that Plaintiff can assert that MIT knew or should have known of Mr. Lewin's conduct, Defendant ignores Mr. Lewin's own acknowledgment that he has in fact engaged in this type of behavior before.  In MIT's report, Mr. Lewin acknowledged that he had sent sexually explicit pictures to someone else (Woman A) "probably this year-very recently."  Mr. Lewin also stated that he sent

14

"a different picture at a different time" to another woman (Woman B), and also exchanged pornographic images 'back and forth' with her on Facebook.  In response to Mr. Lewin's disclosure, MIT merely asked Mr. Lewin whether Woman A and Woman B were adults, meaning over the age of 18.  MIT notably did not make any attempt to determine if these other women were students in Mr. Lewin's classroom or online courses.  Mr. Lewin also admitted that if the same circumstances occurred in a classroom he would have acted in the same way.  Due to this utter failure to inquire, discovery is needed in this case in order to determine if MIT already knew that the other women receiving inappropriate communications and pictures from Mr. Lewin were students in Mr. Lewin's online course which would make Mr. Lewin's conduct towards Ms. Harbi reasonably foreseeable to MIT.

Moreover, in asserting that MIT had no legal duty to prevent Mr. Lewin from engaging in misconduct that was not reasonably foreseeable to MIT, Defendant ignores *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998), where the court articulated that the number of reported cases involving sexual harassment of students in schools confirms that harassment unfortunately is an all too common aspect of the educational experience.  While the court in *Gebser* did not explicitly state that because sexual harassment is common place in schools it is reasonably foreseeable, it can be reasonably inferred from the court's reasoning that correlation was implicitly intended. Moreover, sexual assaults and harassment of women on MIT's campus were reasonably foreseeable to MIT through their duty to report on campus crime statistics under the Clery Act and the widespread attention that sexual assaults on college campuses was given by the recent flurry of media reports covering this epidemic.  According to MIT's 2016 Clery Report, MIT reported that between 2013 and 2014, there were 33 instances of rape and 16 instances of fondling.  Moreover, in 2014, former President Barack Obama launched the "It's on Us" initiative

to bring awareness to help end sexual assaults on college campuses.  During this initiative, statistics showed that one in five women were sexually assaulted during their college years.  These statistics were also confirmed by the 2011 Dear Colleague Letter that was issued to all educational institutions that also found that about 1 in 5 women are victims of completed or attempted sexual assault while in college.[2]  These alarming numbers indicated that sexual assault and harassment were reasonably foreseeable by MIT.  Due to the statistics that highlight that sexual harassment in schools is in general reasonably foreseeable to educational institutions and the need for more discovery, Plaintiffs negligence claim should not be dismissed.  Similarly, due to the high incidents of sexual assaults and harassment of students, MIT conducted a survey in 2014 which revealed the troubling statistical evidence of sexual assaults and harassment on MIT's campus where 17% of all female students reported experiencing sexual assault.

In further arguing that Plaintiffs negligence claim should be dismissed for a lack of legal duty owed to Plaintiff by Defendant, Defendant fails to acknowledge that MIT also had a statutory duty to Plaintiff under  Mass. Gen. Laws ch. 214 §1C.  According to Mass. Gen. Laws ch. 214 §1C, "a person shall have the right to be free from sexual harassment."  Specifically, in *Doe v. Bradshaw*, 2016 U.S. LEXIS 114748, at *47 (D. Mass. 2016) the court held that chapter 214 confers strict vicarious liability on an educational institution for sexual harassment by any employee vested with authority to care for and/or supervise students.  Therefore, *Bradshaw* stands for the expressed ruling that Mass. Gen. Laws ch. 214 §1C confers a legal duty on schools by holding a school vicariously liable for sexual harassment by its employees and imposing a strict liability duty on schools to monitor their employees in order to prevent those employees from sexually harassing students.  A schools failure to uphold that duty will ultimately result in liability

---

[2] In April 2011 the Department of Education, Office of Civil rights issued a warning to all educational institutions throughout the country reminding them of their responsibilities to protect students from sexual harassment.

under Mass. Gen. Laws ch. 214 §1C.  Given the fact that Plaintiff has sufficiently alleged that MIT had a statutory duty to prevent sexual harassment by its employees, including Mr. Lewin, Plaintiffs negligence claim should not be dismissed.

In arguing that Plaintiffs negligence claim should be dismissed for a lack of legal duty owed to Plaintiff by Defendant, Defendant ignores that MIT had a duty to Plaintiff that arose out of a special and/or contractual relationship between the parties and/or arose out of MIT's voluntary assumption of duty.  The issue of imposing a duty onto a university out of a special relationship between the university and a student arose in *Leader v. Harvard University Board of Overseers,* 2017 U.S. Dist. WL 1064160, at * 5 (D. Mass. March 17, 2017), where the court used Restatement (Second) of Torts § 314A cmt. b, which recognizes that a duty can arise out of special relations between the parties,  to find that Harvard University had a duty of care towards a student as a result of the university-student relationship.  As the court found in *Leader*, in the instant case, MIT also owed Ms. Harbi a duty of care that arose out of the university-student relationship that existed.  Moreover, in *Leader*, the court also held that since the case law was not completely settled on the scope of the special relationship duty presented in the case and the fact that the case was only at the motion to dismiss stage, the court should accept that the first element of the negligence claim is established against Harvard University.  As the instant case is only at the motion to dismiss stage, the court should similarly accept that the first element of the negligence claim against MIT is established and not dismiss the negligence claim and allow the jury to make a determination on the scope of the special relationship duty between Ms. Harbi and MIT.  These issues can be revisited in a motion for summary judgment.

MIT also voluntarily assumed a duty of care towards its students by establishing policies prohibiting sexual harassment by teachers and holding teachers accountable for such foreseeable

misconduct.  As admitted by MIT in its report, MIT provided Ms. Harbi with the same rights and privileges accorded to MIT students attending classes on their campus.  Because MIT had a contractual and voluntary duty to protect the Plaintiff against sexual harassment by Mr. Lewin, the Plaintiff's negligence claim should not be dismissed.

### D.  Plaintiffs Claim for Negligent Infliction of Emotional Distress Does Not Fail as Plaintiff Has Alleged that Defendant Owed Plaintiff a Duty of Care

In order to state a claim of negligent infliction of emotional distress a Plaintiff must show: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.  *Conley v. Romeri,* 60 Mass. App. Ct. 799, 801 (2004). Specifically, there must be a showing of a duty of care owed to the plaintiff, because there can be no negligence where there is no duty.  *Id.*  The issues of causation and whether a reasonable person would have experienced such emotional distress under the circumstances are undoubtedly questions for a jury.  *See Selfridge v. Jama,* 172 F.Supp.3d 397, 424 (2016).

In claiming that Plaintiffs negligent infliction of emotional distress claim should be dismissed, Defendant erroneously argues that Plaintiff has not alleged facts to support the existence of any legal duty that Defendant owed to Plaintiff.  While Defendant argues that Plaintiffs negligence claim does not state a claim for relief because she has not stated any legal duty that Defendant owed to Plaintiff, as discussed above, Plaintiff has alleged sufficient facts indicating that MIT had a legal duty to prevent Ms. Harbi's harm that was reasonably foreseeable to MIT and a statutory duty under Mass. Gen. Laws ch. 214 §1C to monitor the conduct of MIT employees.  Given the fact that Plaintiff has alleged facts to support the existence of a legal duty

owed by MIT to all students, including Ms. Harbi, Plaintiffs negligent infliction of emotional

distress claim should not be dismissed.

### E. Plaintiff Should Be Allowed to Refer to MIT's Report on the Investigation of Alleged Sexual Misconduct by Professor Walter Lewin Without Neccesarily Converting This Motion Into One For Summary Judgment

Under Fed. R. Civ. P. Rule 12 (b)(6), if on any motion asserting a particular numbered

defense mentions matters outside the pleading and are not excluded by the court, the motion may

be treated as one for summary judgment rather than as one to dismiss.  *See Golchin v. Liberty Mut.*

*Ins. Co*, 460 Mass. 222, 224 (2011).  This conversion, however, is not an absolute requirement

because "where…the plaintiff had notice of [the extrinsic] documents and relied on them in

framing the complaint, the attachment of such documents to a motion to dismiss does not convert

the motion to one for summary judgment."  *Id*.  Moreover, on a Fed. R. Civ. P. 12(b)(6) motion,

the court may consider public records and other documents referred to in the complaint, without

treating the motion as one under Fed. R. Civ. P. 56.  *Chatman v. Gentle Ctr*., 973 F.Supp. 228, 232

(D.Mass.1997).

Allowing Plaintiff to refer to MIT's report without converting this motion into a Summary

Judgment motion is proper as the report is central to Plaintiff's complaint. At times a Plaintiff may

attach documents to the original complaint as well as just referring to them. The issue of attaching

a document not initially attached to the pleading was addressed in *Fudge v. Penthouse Int'l, Ltd*.,

840 F.2d 1012, 1015 (1st Cir. 1988), where the Court allowed Plaintiff's to attach an article to

their complaint where the article was central to Plaintiff's case and in order to prove the case

Plaintiff unquestionably would have had to offer a copy of the article.  Similar to *Fudge*, in the

instant case, MIT's Investigation report is central to Ms. Harbi's claims against MIT as the report

provides statements made by Mr. Lewin regarding his conduct towards Ms. Harbi and illustrates

inadequacies in how MIT investigated Ms. Harbi's complaint.  In asserting various claims against MIT in the pleading, Plaintiff made numerous references to MIT's Investigation report in her original complaint and will unquestionably have to present evidence contained in the report in order to offer specific proof of her claims against MIT.[3]  Given that MIT's report is central to Plaintiffs claims against MIT, the court should consider the facts raised in the report without necessarily converting this motion into a Summary Judgment motion. However, in the alternative, if the court does consider the Defendant's motion as a motion for summary judgment, then the Plaintiff requests an opportunity to conduct necessary discovery on these issues pursuant to Fed. R. Civ. P. Rule 56(d).  See Affidavit of Attorney Angueira attached as <u>Exhibit B</u>.  WHEREFORE, for the reasons set forth above, Plaintiff respectfully requests this Court to deny Defendant's Motion to Dismiss.

Respectfully Submitted,
The Plaintiff,
By His Attorney,

  */s/ David P. Angueira*
David P. Angueira, BBO #019610
Swartz & Swartz, P.C.
10 Marshall Street
Boston, MA 02108
Tel: (617) 742-1900
Fax: (617) 367-7193
dangueira@swartzlaw.com

---

[3] MIT has not filed a motion to strike any reference to the MIT report and therefore it has waived any argument that it can be considered by the court.

## <u>CERTIFICATE OF SERVICE</u>

I, David P. Angueira, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this 7th day of April 2017.

*/s/ David P. Angueira*

David P. Angueira, Esq.
