UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| FAIZA HARBI, | ) | |
|  | ) | |
| Plaintiff | ) | |
|  | ) | |
| v. | ) | Docket No. 1:16-cv-12394 |
|  | ) | |
| MASSACHUSETTS INSTITUTE | ) | |
| OF TECHNOLOGY and WALTER | ) | |
| LEWIN, | ) | |
| Defendants. | ) | |

---

## DEFENDANT WALTER LEWIN'S MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## I.    INTRODUCTION

The Court should dismiss all counts against Defendant Walter Lewin (hereinafter "Lewin" or "defendant") (Counts III, V, VI, VII, IX), pursuant to Fed. Rule Civ. P. 12(b)(6) because the plaintiff fails to state a claim against Lewin.

### A.  Facts As Alleged in Amended Complaint

The relevant facts, as set forth in the Amended Complaint and attached Exhibit A, are as follows.[1] In August 2013 the plaintiff, a married 31-year-old resident of Montpellier, France, enrolled in an online course offered by MIT, which was taught by Lewin. Am. Compl. ¶ 1, 6 (ECF No. 32-1); Am. Compl. Exh. A. at 9, 11 (ECF No. 32-2). She was one of 40,000 students who registered for that particular course. Am. Compl. Exh. A at 7. The course ended on January

---

[1] Lewin strongly disagrees with much of the plaintiff's representation of the facts, and notes that the Amended Complaint omits substantial relevant facts. However, for the purposes of this Motion, Lewin sets forth the facts that are alleged in the Amended Complaint and as presented by Plaintiff in Exhibit A to the Amended Complaint, and which, as explained below, are insufficient to support the claims the plaintiff makes against him.

15, 2014. Am. Compl. ¶ 8. On November 24, 2013 Plaintiff initiated communications of a personal nature with Lewin, by disclosing to him that she was on medication that might affect her concentration in class, which led him to ask her why she was on medication. Am. Compl. ¶ 16; Am. Compl. Exh. A at 7-8. Plaintiff responded by disclosing her medical diagnoses, and then followed up by sharing deeply personal information with defendant related to her mental health issues and childhood abuse. Am. Compl. Exh. A at 8-11. During this exchange, Plaintiff accepted a Facebook friend request from Lewin, and she and Lewin began having personal communications over Facebook messenger and Skype. Am. Compl. ¶ 19; Am. Compl. Exh. A at 9.  Over the next few weeks Plaintiff continued to discuss deeply personal matters with Lewin. Am. Compl. Exh. A at 12. On December 13, 2013, Lewin told Plaintiff he loved her and "wanted" her. Id. She responded that she loved him as well, and when Lewin suggested that he thought she was sexually attracted to him she said "[f]rankly, I have no clue." Id.

   In a conversation on December 14, 2013, Lewin complimented Plaintiff's looks, and she responded by sending him photographs of herself in shorts, and a photograph of her nude breasts. Am. Compl. Exh. A at 15. The following day Plaintiff sent an email in which she told Lewin: "It makes me feel good that a man like you, with your experience, feels such strong feelings and desires for me . . . I know it's genuine. You're not fooling around with me. . . . I don't love you the same way you love me. . . . I am aware that you can say words that make me feel excited physically. I still know it's not the same love as yours." Id. at 16.  In the days that followed, Plaintiff told Lewin "it was 'very pleasing to be desired.'" Id. at 18. She also sent him nude videos and pictures. Id. at 18-19. On January 8, 2014, Plaintiff sent Lewin an email stating "It is extremely pleasing to see you having sex, to talk to you while you do it, to hear you . . . I find it incredibly beautiful and pure . . . it makes me feel close to you." Id. at 20. Lewin responded the

next day telling her that if she wanted him not to engage sexually with her, he would stop, but

that her previous email was not clear. Id. at 21. In her response she stated: "I want to see you

cum. Yes it arouses me, and I don't know why." Id. Plaintiff claims that on January 17, 2014

Lewin sent her an explicit photograph of himself. Id. at 21.[2] That photograph is the last sexual

communication Plaintiff is alleged to have had with Lewin. Id. at 22. The Plaintiff alleges that in

August 2014 (eight months after she and Lewin terminated their sexual communications), she

began to self-mutilate and was hospitalized. Am. Compl. ¶ 26. She alleges that these behaviors

were caused by a realization that her online sexual activity with Lewin was inappropriate. Id.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss the complaint must provide "a short and plain statement of

the claim showing that the pleader is entitled to relief." Garcia-Catalan v. United States, 734 F.3d

100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he complaint 'must contain more

than a rote recital of the elements of a cause of action.'" Garcia-Catalan, 734 F.3d at 103

(quoting Rodríguez–Reyes v. Molina–Rodríguez, 711 F.3d 49, 53 (1st Cir. 2013)). Although the

complaint need not contain "detailed factual allegations," it must state a plausible claim and

"more than labels and conclusions" are required. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007).

A claim must have facial plausibility by virtue of containing sufficient factual content to

allow a court to draw the reasonable inference that a defendant is liable for the misconduct

alleged. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Twombley, 550

---

[2] Lewin disputes that he ever sent Plaintiff explicit photographs of himself, and Plaintiff never
provided MIT any evidence that it was Lewin that sent the photograph she claimed to have of
him. Am. Compl. Exh. A at 22.

U.S. at 556); <u>Harron v. Town of Franklin</u>, 660 F.3d 531, 535 (1st Cir. 2011). "In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken." <u>Burns v. Potter</u>, 334 F. Supp. 2d 13, 17 (D. Mass. 2004). Where an exhibit contradicts the allegations in the Complaint, the exhibit controls. <u>Bogie v. Rosenberg</u>, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss"); <u>Griffin Indus., Inc. v. Irvin</u>, 496 F.3d 1189, 1206 (11th Cir. 2007) ("Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.")

## III.   DISCUSSION

Plaintiff failed to plead with sufficient particularity many of the allegations in her Amended Complaint, has pled facts that are directly contradicted by the exhibits she attaches, and has failed to plead the existence of any plausible claims against Mr. Lewin under the legal theories she has stated in her complaint. The Amended Complaint must therefore be dismissed in its entirety. Lewin hereby incorporates by reference the arguments made in support of his first Motion to Dismiss (ECF No. 23 and 24).

### A.  Plaintiff's Negligence Claim Against Lewin Must Be Dismissed Because Plaintiff Fails to Identify a Duty Owed By Lewin to Plaintiff

In any negligence claim "[p]laintiffs must show: (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury." <u>Jorgensen v. Massachusetts Port Auth.</u>, 905 F.2d 515, 522 (1st Cir. 1990). Because Plaintiff fails to identify any legal duty that Lewin owed her, her negligence claims against Lewin must be dismissed.

The plaintiff alleges that "'Lewin', had a duty to protect 'MIT's' students, including 'Harbi' and to provide a safe learning environment for her as an online student and to prevent sexual harassment of Plaintiff 'Harbi.'" Am. Compl. ¶ 90. The plaintiff pleads conclusory legal allegations that the source of this duty was (1) M. G. L. c. 214, § 1C; (2) a contractual relationship between Harbi and MIT; and (3) a voluntary assumption of a duty. Id.  The Court need not credit these (incorrect) legal conclusions. Morales-Cruz v. Univ. of Puerto Rico, 676 F.3d 220, 224 (1st Cir. 2012) ("the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited.)") (internal citation omitted). Massachusetts does not recognize any legal duty in the circumstances of this case.

1.   M. G. L. c. 214, § 1C Does Not Create Duties That Sound in Tort

Lewin owed plaintiff no duty based on M. G. L. c. 214, § 1C, a statute that provides a general right to be free from sexual harassment, and allows for claims only against educational institutions, but not individuals. Doe v. Bradshaw, 203 F. Supp. 3d 168, 189 (D. Mass. 2016). Statutes in and of themselves cannot create duties that sound in tort. "It is only where a duty of care exists that the violation of a statute, ordinance, regulation, or policy is relevant because it constitutes some evidence of a defendant's negligence. . . . The violation does not constitute negligence per se."  Lev v. Beverly Enterprises-Massachusetts, Inc., 457 Mass. 234, 245 (2010). See also Go-Best Assets Ltd. v. Citizens Bank of Massachusetts, 463 Mass. 50, 62 (2012) ("[A] statutory duty would not create a duty of care in tort in the absence of legislative intent to create a private right of action."); Juliano v. Simpson, 461 Mass. 527, 532 (2012) ("A duty of care must already exist before a plaintiff can use a defendant's statutory violation to support a claim of tort liability.").

5

2.      Contractual Obligations Do Not Create Tort Duties

Plaintiff alleges that Lewin's duty of care "arose from . . . the contractual relationship between 'Harbi' and 'MIT,'" Am. Compl. ¶ 90,[3] and that he had a "duty of care" to adhere to various MIT policies. Am. Comp. ¶ 111. Although plaintiff makes the conclusory legal allegation that there was a contract between herself, MIT, and Lewin, Am. Compl. ¶¶ 8, 134, such legal conclusions need not be credited by the Court, and Plaintiff provides no facts to support the existence of a contract between her and Lewin. To the extent that Plaintiff further insinuates that she had a separate contract with MIT, and that Lewin also had a contract with MIT, Am. Compl. ¶¶ 11, 33, 90, 91, 132, she fails to plead sufficient facts to support the existence of a valid and binding contract between Lewin and MIT.

To adequately plead a breach of contract claim, Plaintiff must allege the elements of such a claim, including the existence of a "valid binding agreement." Gibbs v. SLM Corp., 336 F. Supp. 2d 1, 16 (D. Mass. 2004), aff'd, No. 05-1057, 2005 WL 5493113 (1st Cir. Aug. 23, 2005); Roachford v. Sovereign Bank, N.A., No. CIV.A. 12-10168-GAO, 2013 WL 45266, at *1 (D. Mass. Jan. 2, 2013) ("Simply using words like 'offer' and 'acceptance' is not enough to plead the existence and breach of a contract. Rather, the Complaint must assert facts to support the existence of the basic elements of a breach of contract claim, including a valid and binding agreement supported by consideration, breach by one party, and damages."). As a matter of law, Plaintiff cannot meet these elements.

Plaintiff incorrectly states that at all relevant times Lewin was a Professor at MIT, Am. Compl. ¶ 3, but in fact, he had retired from MIT and was a Professor Emeritus. Am. Compl. Exh.

---

[3] It is axiomatic that a contract cannot impose obligations on one who is neither party to the contract nor aware of the nature of the contract.

A. at 1. Plaintiff fails to plead that there was, in fact, a contractual relationship between MIT and Lewin with regard to MIT using his recorded lectures as part of their EdX classes, and his participation in that program by providing MIT with interactive questions for students, and by answering student questions online. Am. Compl. Exh. A. 6-7. Plaintiff has failed to plead essential elements of her claim, namely the existence of a contract to which Lewin was a party.

Even if she had properly pled the existence of a contract between Lewin and MIT, and properly pled the terms of that contract, no duty of care running to Harbi would arise out of such a contract. A duty of care required to prove a negligence claim must arise independently of any contractual duty imposed on the parties. *See* Anderson v. Fox Hill Vill. Homeowners Corp., 424 Mass. 365, 368 (1997) ("[F]ailure to perform a contractual obligation is not a tort in the absence of a duty to act apart from the promise made"); Monadnock Display Fireworks, Inc. v. Town of Andover, 388 Mass. 153, 156–57 (1983) ("By the contract, the parties simply created a duty that did not otherwise exist, and, since that duty was imposed by contract, and not by law, breach of the duty was not tortious."); Treadwell v. John Hancock Mut. Life Ins. Co., 666 F. Supp. 278, 289 (D. Mass. 1987) ("[A]bsent an independent duty imposed by law, plaintiff has not stated an action in tort by alleging injury caused by Hancock's negligent performance of its promises to retrain him or to perform job evaluations."). Plaintiff's theory would eviscerate this long-established legal rule, and would allow any person around the world who signs up for an online course to bring tort claims against the instructors managing the course for any alleged violation of the host universities' general policies. Such an expansive view of online course instructors' duties is simply not consistent with Massachusetts law. Plaintiff cannot plead that Lewin's alleged contractual obligations to MIT are also duties of care owed to her.

3.      Lewin Did Not Voluntarily Assume Any Duty of Care

Lewin did not voluntarily assume any duty of care with respect to Plaintiff. Notably, although Plaintiff makes this argument in her Opposition to Lewin's First Motion to Dismiss ("Pltf. Opp."), she cites no case law to support the existence of such a duty. Pltf. Opp. at 8-9 (ECF No. 33).

Plaintiff pleads that "'Lewin' and 'MIT' voluntarily assumed a duty of care to ensure that their student was treated equally as any other 'MIT' student and not subjected to sexual harassment." Am. Compl. ¶ 29. Courts in Massachusetts have routinely rejected the idea that universities or their employees owe a duty of care, particularly to non-resident students, to generally protect them from physical harm or sexual harassment. *See* Doe v. Trustees of Boston Coll., No. 15-CV-10790, 2016 WL 5799297, at *28-29 (D. Mass. Oct. 4, 2016); Doe v. Emerson Coll., 153 F. Supp. 3d 506, 515 (D. Mass. 2015); Bash v. Clark Univ., No. 06745A, 2006 WL 4114297 (Mass. Super. Nov. 20, 2006).[4]

Plaintiff also pleads that "'Lewin' was contractually obligated and voluntarily assumed the duty to adhere to [MIT's] policies and procedures as a condition of his employment and/or association with 'MIT.'" Am. Compl. ¶ 33. As explained above, Plaintiff cannot create a tort

---

[4] Plaintiff's reliance on Leader v. Harvard University Board of Overseers, No.16-10254-DJC, 2017 WL 1064160 (D. Mass., Mar. 17, 2017), is misplaced. *See* Pltf. Opp. at 8, 11. First, Leader did not address the question of whether a professor owed any duty of care to students, only whether a duty might be owed by the university. Second, Harvard conceded that it had a duty of care to protect students (like the plaintiff in that case), "housed in a facility on campus." Leader, 2017 WL 1064160 at *5. The Court did not agree that such a duty existed, but held "[b]ecause the case law is not settled on the scope of such duty and, given the motion to dismiss stage, the Court will accept Harvard's concession both in its papers and at oral argument as to the first element of the negligence tort." Id. Not only was there no legal determination as whether Harvard owed the plaintiff a duty, but the case was limited to the question of the university's duty to students in on-campus housing. The facts of the instant case are entirely distinct.

duty of care out of Lewin's alleged contractual obligations to MIT, regardless how she phrases such a duty. Moreover, courts in Massachusetts have made clear that there is no tort duty imposed on university employees to enforce university policies.  Doe v. Emerson College, 153 F. Supp. 3d at 515. *See also* Doe v. Trustees of Boston College, 2016 WL 5799297 at *28 (citing Doe v. Emerson College).

The Restatement (Second) of Torts § 323, which Massachusetts has approved and applied, Cottam v. CVS Pharmacy, 436 Mass. 316, 323 (2002), further demonstrates that Lewin assumed no relevant duty with respect to Plaintiff. Section 323 states in full:

> One who undertakes, gratuitously or for consideration, to render services to
> another which he should recognize as necessary for the protection of the other's
> person or things, is subject to liability to the other for physical harm resulting
> from his failure to exercise reasonable care to perform his undertaking, if
> (a) his failure to exercise such care increases the risk of such harm, or
> (b) the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323. Plaintiff does not allege, nor could she, that Lewin undertook to render her any services that were necessary for the protection of her person or things. The only services Lewin even arguably undertook to render to Plaintiff was instruction in physics, which he provided as he did to all of his students via the EdX platform.

Because Plaintiff fails to plead the necessary factual allegations to establish that Lewin owed her a duty of care, her negligence claims fail.

### B.  Plaintiff's Negligent Infliction of Emotional Distress Claim Also Fails Because Plaintiff Cannot Identify a Duty Owed by Lewin to Plaintiff

The elements of a claim of negligent infliction of emotional distress are: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton v. Abbott Labs, 386 Mass. 540 (1982). "It is fundamental

that there must be a showing of a duty of care owed to the plaintiff, because '[t]here can be no

negligence where there is no duty.'" <u>Conley v. Romeri</u>, 60 Mass. App. Ct. 799, 801 (2004)

(internal citation omitted).

As discussed above, Plaintiff Harbi has not alleged facts to support the existence of any

legal duty that Defendant Lewin violated by engaging in an online sexual relationship with her.

Again, the only duty Harbi alleges Lewin violated with respect to her claim of negligent

infliction of emotional distress is a

> duty of care to adhere to "MIT's" policies and procedures that required him to
> conduct himself in a professional manner and to avoid ethical, legal, financial, or
> other conflicts of interest and his duty to protect his students from sexual assault
> using "MIT's" own online resources. "Lewin" knew or should have known that
> sexual assaults at colleges are foreseeable circumstances and "Lewin" failed to
> take the necessary precautions to safeguard and protect their [sic] students.

Am. Compl. ¶ 111. For the reasons stated above, Lewin owed plaintiff no duty of care. *Cf.* <u>Doe

v. Emerson Coll.</u>, 153 F. Supp. 3d 506, 517 (D. Mass. 2015) ("Because the Court has indicated

that the defendants are entitled to judgment on Doe's negligence claim, her claim for negligent

infliction of emotional distress must also fail.") (citing <u>Urman v. South Boston Savings Bank</u>,

424 Mass. 165, 171 (1997)). Plaintiff's negligent infliction of emotional distress claim (Count V)

must therefore be dismissed.

### C.  Plaintiff's Intentional Infliction of Emotional Distress Claim Must Be Dismissed Because She has not Alleged Extreme or Outrageous Conduct

Under Massachusetts law, to establish intentional infliction of emotional distress,

> The plaintiff must show that: 1) the defendant intended to inflict emotional
> distress or that he knew or should have known that emotional distress would
> result from his action; 2) the conduct was extreme and outrageous, beyond all
> bounds of decency and utterly intolerable in a civilized community; 3) the
> defendant's conduct caused the plaintiff's distress; and 4) the plaintiff's emotional
> distress was severe and of a nature that no reasonable person could be expected to
> endure it.

Morehouse v. Berkshire Gas Co., 989 F. Supp. 54, 65–66 (D. Mass. 1997). As this Court

recently explained in a case involving intentional infliction of emotional distress claims brought

by an alleged victim of sexual assault against individual university administrators, "[c]ourts

apply a 'very high' standard to claims of intentional infliction of emotional distress, especially

on the requirement that the conduct in question is extreme and outrageous, beyond all possible

bounds of decency in a civilized community." Doe v. Emerson Coll., 153 F. Supp. 3d 506, 518

(D. Mass. 2015) (citation omitted). *See also* Borden v. Paul Revere Life Ins. Co., 935 F.2d 370,

380 (1st Cir. 1991) ("liability is imposed only where the case is one in which the recitation of the

facts to an average member of the community would arouse his resentment against the actor, and

lead him to exclaim, 'Outrageous!'"); Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1021 (1st

Cir.1988) ("[C]onduct that is intentional or reckless and causes severe emotional distress does

not *ipso facto* constitute extreme and outrageous conduct."), *cert. denied,* 488 U.S. 821, 109

S.Ct. 65 (1988).

Plaintiff does not allege that Lewin intended to cause her emotional distress by engaging

in sexual communications with her.  Instead, she offers the legal conclusion that Lewin

"exhibited a reckless disregard of the probability of causing 'Harbi' severe emotional distress,

particularly because he had explicit knowledge that 'Harbi' was a vulnerable target given her

history of sexual abuse." Am. Compl. ¶ 122. This conclusory statement, of course, need not be

credited by the Court. While Plaintiff does allege that Lewin knew about past sexual abuse she

had experienced, "vulnerable plaintiffs do not state an emotional distress claim solely by

demonstrating that the defendants were aware of the plaintiffs' susceptibility to emotional injury

when they acted." Guckenberger v. Boston Univ., 957 F. Supp. 306, 318 (D. Mass. 1997). In

sum, Plaintiff does not make any factual allegations that would support a finding that Lewin

knew or should have known that engaging in sexual communications with Plaintiff would result in harm to her.

Nor does Plaintiff plead facts that would support a finding that Lewin's actions were extreme, outrageous, and beyond the bounds of human decency. Plaintiff characterizes Lewin's actions as "outrageous," "insensitive," "abusive," and "highly offensive," Am. Compl. ¶¶ 119, 121, but the facts presented in the Amended Complaint and attached Exhibit A show his actions to be far from the level of outrageousness needed to satisfy the requirements for a claim of intentional infliction of emotional distress. The Plaintiff alleges it was she that initiated personal discussions with Lewin by discussing her medications with him, and when he asked why she was on medication, by detailing her mental health issues and history of childhood sexual abuse. Am. Compl. ¶¶ 16, 17; Am. Compl. Exh. A at 8-10. Plaintiff then continued having personal and sexual conversations with Lewin for the next month and a half. Am. Compl. Exh. A at 12-21. In those communications, when Lewin suggested Plaintiff was sexually attracted to him she did not disagree with him. Am. Compl. Exh. A at 15. When he complimented her looks, she responded by sending him partially nude pictures of herself. Am .Compl. Exh. A at 14-15. She subsequently told Lewin that it was "pleasing to be desired," that it "is extremely pleasing to see [him] having sex, to talk to you while you do it, to hear you" and sent him more nude photographs. Am. Compl. Exh. A at 18-20. At one point, he told her that if she did not want their communications to be sexual in nature he would stop, and she replied "I love seeing you have pleasure . . . And yes, I want to see you cum. Yes it arouses me . . ." Am. Compl. Exh. A at 21. The Amended Complaint and its exhibits make clear that Lewin's actions were not only far from outrageous or beyond the bounds of human decency, they were welcome and encouraged by Plaintiff.

The Complaint is particularly notable for what it fails to allege. Plaintiff does not allege that she ever told Lewin his sexual comments were unwelcome, or that she ever asked him to stop engaging in sexual communications with her, and indeed, Exhibit A which she attaches to her Amended Complaint demonstrates the opposite was true. *Compare* Boyle v. Wenk, 378 Mass. 592, 596 (1979) (finding "significant" to claim for intentional infliction of emotional distress that the defendant continued unwanted, invasive communications after the plaintiff explicitly told him to stop).

Plaintiff alleges that she participated in the sexual communications with Lewin out of a fear that rejecting him would affect her coursework. Plaintiff does not allege, however, that Lewin ever threatened to remove her from the course if she did not continue their sexual communications, or indeed threatened *any* negative consequence if she ended their online flirtations; indeed, Exhibit A demonstrates that Lewin *offered* to end their sexual communications if she so desired, and she said she wanted them to continue. Am. Compl. Exh. A at 21. Plaintiff's sole allegation attempting to establish that the sexual communications were tied to her potential success in the course is that Lewin's communications "*impl[ied]* that her success with the class *could* be affected by her relationship with 'Lewin.'" Am. Compl. ¶ 22 (emphasis added). She cites to two comments he made indicating he believed she was doing well in the course, to argue that he was engaging with her sexually as a *quid pro quo* for passing the course. Am. Compl. ¶ 23.

Plaintiff also fails to plead with sufficient particularity any facts to support that Lewin's actions caused her later self-mutilation and hospitalization. Plaintiff alleges the sexual communications began in December 2013, and Exhibit A indicates that they ended in mid-January 2014. Am. Compl. ¶ 21; Am. Compl. Exh. A at 21-22.  The substantial time lapse

between Lewin's actions and the alleged harm undermine any claim of causation. In attempting

to plead the elements of her claim, plaintiff alleges that her interactions with Lewin caused

"extreme emotional distress as evidenced by her self-mutilation shortly thereafter." Am. Compl.

¶ 120. Without more factual assertions, this conclusory allegation is inadequate to plead the

causal connection between the harassment and the self-mutilation. As the First Circuit recently

held, conjecture and surmise cannot form the basis of a well-pleaded complaint. Jane Doe No. 1

v. Backpage.com, LLC, 817 F.3d 12, 25 (1st Cir. 2016), *cert. denied*, No. 16-276, 2017 WL

69715 (U.S. Jan. 9, 2017). *See also* A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st

Cir. 2013) ("Here, moreover, that conclusory statement is presented as an ipse dixit, unadorned

by any factual assertions that might lend it plausibility."). Particularly where the Plaintiff admits

that the disorder she alleges was caused by Lewin's conduct in fact pre-dated that conduct, Am.

Compl. ¶ 43, some factual allegation is needed to connect the emotional distress she alleges with

Lewin's actions some eight months prior.  For these reasons, Plaintiff's intentional infliction of

emotional distress claim (Count VI) must be dismissed.

### D.  Plaintiff's Assault Claim Must Be Dismissed Because There was no Threat or Possibility of Physical Harm to Plaintiff

"Assault, under Massachusetts tort law, requires that the defendant 'act[ed] intending to

cause a harmful or offensive contact' with plaintiff, 'or an imminent apprehension of such

contact,' and that plaintiff was 'thereby put in such imminent apprehension.'"  Kennedy v. Town

of Billerica, 617 F.3d 520, 538 (1st Cir. 2010) (citing Restatement (Second) Torts § 21(1) (1965)

and Conley v. Romeri, 60 Mass. App. Ct. 799, 805 n.6 (2004). *See also* Commonwealth v.

Gorassi, 432 Mass. 244, 247 (2000) ("Under the common law, an assault may be accomplished

in one of two ways—either by an attempted battery, or by putting another in fear of an

immediately threatened battery"). "[T]he central aspect of an assault is an attempted application

14

of physical force or a threat of the use of physical force, either by an attempt to do bodily harm, or by placing the victim in fear of imminent bodily harm." <u>Gorassi</u>, 432 Mass. at 248.  Where, as here, the Complaint utterly fails to allege that Defendant Lewin intended to make the Plaintiff fear immediate bodily harm, or that she in fact did fear immediate bodily harm, much less that Defendant Lewin took any overt action toward that end, her assault claim cannot stand.[5]

Plaintiff fails to plead that Lewin intended to make her fear imminent physical harm. The only facts she pleads that discuss his intent in engaging in sexual conversations with her indicate that he wanted to help, not harm her. Am. Compl. ¶¶ 35, 44. Plaintiff makes conclusory statements about Lewin's demeanor, including that it was intended to cause fear of "severe repercussions," Am. Compl. ¶ 45, and that it was "threatening and intimidating," Am. Compl. ¶ 24, but pleads no facts to support the conclusion that he engaged in acts that were, in fact, threatening. Nor does she plead any facts to support that those repercussions or threats related to physical harm.

Nor does Plaintiff plead any facts that would establish that she was in fear of "imminent bodily harm." The only allegation she makes as to her mental state is that she felt Lewin's demeanor in some of their online exchanges were "threatening" to her. Am. Compl. ¶ 45. Again, she does not plead any facts explaining what harm she feared, or even stating that she believed it would be physical in nature.

She also fails to plead any facts indicating that any alleged threat was of "imminent"

---

[5] Defendant is also entitled to have this claim dismissed because Plaintiff merely offers a "legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), *quoting* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). The sole allegation the Plaintiff makes relating to assault is "'Lewin' placed 'Harbi' in imminent fear of an offensive or harmful contact and thus assaulted 'Harbi' without her consent, all to 'Harbi's' great damage." Am. Compl. ¶ 128.

harm. Plaintiff cites to a single case in her Opposition to Lewin's first Motion to Dismiss (ECF No. 33) ("Plaintiff's Opposition"), to support her claim that Lewin assaulted her, citing it solely for the proposition that "imminent does not mean immediate," Pltf. Opp. at 17. Presumably her insinuation is that it is possible for someone in Cambridge, Massachusetts to threaten "imminent" physical harm to someone in Montpelier, France, even if it would take that person a minimum twelve hours to travel from one place to the other.[6] The footnote Plaintiff relies on in Ginsberg v. Blacker, 67 Mass. App. Ct. 139 (2006), merely states that the standards for criminal assault and civil assault in Massachusetts are similar; nowhere does it state that "imminent harm" does not mean "immediate" harm. While the plaintiff is correct that those words are not precisely synonymous, "imminent" harm still requires "no significant delay" between the threat and the harm:  "It is enough that one is so close to striking distance that he can reach the other almost at once, or that he can make the weapon ready for discharge in a very short interval of time." Restatement (Second) of Torts § 29, comment b (1965). *See also*, Gorassi, 432 Mass. at 247 (defining assault as "putting another in fear of an immediately threatened battery"). Lewin was in no position to imminently physically harm Plaintiff, and she does not allege that he was.

Plaintiff also fails to plead that Lewin took any action, other than speech, to place her in fear of imminent bodily injury. "Ordinarily mere words, unaccompanied by some act apparently intended to carry the threat into execution, do not put the other in apprehension of an imminent bodily contact, and so cannot make the actor liable for an assault under the rule." Restatement (Second) of Torts § 31 (1965).

The single case Plaintiff cites in her Opposition, and the cases cited therein, demonstrate

---

[6] Plaintiff makes no allegation that Lewin threatened that someone other than him, for example, someone in Montpelier, France, would carry out threatened physical harm.

Plaintiff's absolute failure to plead any facts to support an assault claim. In Ginsberg v. Blacker the Appeals Court held that an ex-husband's actions, which included screaming in his ex-wife's face so close to her that his spit landed on her, waving his hands in her face, following her around her house screaming, and cursing at her, had put her in fear of "imminent serious physical harm." 67 Mass. App. Ct. at 141, 143. Conversely, in Wooldridge v. Hickey, 45 Mass. App. Ct. 637, 639–641 (1998), the court found that conclusory assertions by a wife of past abuse, with no details, and no explanation of why wife feared imminent physical harm, was not sufficient to meet the standard for an abuse prevention order, which is nearly identical to the standard for finding a civil assault.

Because she fails to plead facts to support a single element of the tort of assault, the Plaintiff's claim for assault (Count VII), must be dismissed.

### E. There was No Contract Between Lewin and Plaintiff, and Plaintiff was not a Third-Party Beneficiary of Lewin's Alleged Contract with MIT

As noted above, Plaintiff fails to plead the existence of any contract between her and Lewin.[7] Plaintiff also appears to allege that she can recover for Lewin's alleged violation of an alleged employment contract with MIT. Am. Compl. ¶¶ 11, 33, 133. As noted earlier, Plaintiff's claim must be dismissed because she fails to adequately plead the existence of a contract between Lewin and MIT.

Even if Plaintiff had properly pled the existence of a contract between Lewin and MIT, third parties may only enforce a contract when they are the intended beneficiaries of the contract.

---

[7] It is unclear whether Plaintiff actually intends to bring a breach of contract claim against Lewin, as she only demands judgment against MIT. Am. Compl. ¶ 135. For the purpose of this Motion Lewin assumes without conceding that Plaintiff is attempting to plead a breach of contract claim against him.

Rae v. Air-Speed, Inc., 386 Mass. 187, 195 (1982) (adopting the intended beneficiary rule). "It

must appear from 'the language and circumstances of the contract' that the parties to the contract

'clear[ly] and definite[ly]' intended the beneficiaries to benefit from the promised performance."

Miller v. Mooney, 431 Mass. 57, 62 (2000) (quoting, in part, Anderson v. Fox Hill Village

Homeowners Corp., 424 Mass. 365, 366-67 (1997)). "The intent of the contracting parties is the

central inquiry in determining whether a nonparty may maintain an action as a third-party

beneficiary." Pollak v. Fed. Ins. Co., No. CIV. 13-12114-FDS, 2013 WL 6152335, at *3 (D.

Mass. Nov. 21, 2013).

    The Supreme Judicial Court has considered, and rejected, the idea that students are the

intended beneficiaries of universities' employment contracts with their faculty. Harvard Law

Sch. Coal. for Civil Rights v. President & Fellows of Harvard Coll., 413 Mass. 66, 71 (1992)

("The plaintiffs are no more than incidental beneficiaries of these contracts."). *See also*, Verni v.

Cleveland Chiropractic Coll., 212 S.W.3d 150, 153 (Mo. 2007) ("Undoubtedly, Verni and all of

Cleveland's students are incidental beneficiaries of employment contracts between the college

and faculty members, but not every person who is benefited by a contract may bring suit to

enforce that contract."); Autry v. Hooker, 304 S.W.3d 356, 361 (Tenn. Ct. App. 2009) (Noting

that trial court held students are not intended beneficiaries of employment contract between

school district and teachers, and cannot recover for teacher's violation of district's sexual

harassment policies).

    Plaintiff fails to allege that in entering into the alleged contract regarding provision of

EdX courses, Lewin and MIT clearly and definitely intended for MIT EdX students such as

Harbi to be the beneficiaries of that contract. *See* Haggins v. Verizon New England, Inc., 648

F.3d 50, 57 (1st Cir. 2011) ("The district court's analysis that the plaintiffs failed to state a claim

under state law was obviously correct. As the district court held, the plaintiffs introduced no evidence other than the relevant contract term to show that any third-party beneficiary status in employees was intended."); Giuffre v. Deutsche Bank Nat. Trust Co., No. CIV.A. 12-11510-JLT, 2013 WL 4587301, at *2 n.24 (D. Mass. Aug. 27, 2013), aff'd, 759 F.3d 134 (1st Cir. 2014) ("This argument fails because Giuffre pleads no facts suggesting that the parties to the mortgage (Sohmer and Option One) expressed clear and definite intent to benefit Giuffre.").

Because plaintiff fails to allege any facts to support her claim that a contract existed between her and Lewin, and fails to allege the existence any facts indicating that MIT and Lewin intended her to be the beneficiary of their employment contract, her contract claim against Lewin must be dismissed.

### F.  Punitive Damages Are Not Available Against Lewin

In each of her claims against Defendant Lewin, the Plaintiff has made a request for punitive damages. See Am. Compl. at ¶¶ 99, 116, 126, 128. "Under Massachusetts law, punitive damages may be awarded only where authorized by statute." Aleo v. SLB Toys USA, Inc., 466 Mass. 398, 412 (2013). Because the claims the Plaintiff makes against Defendant Lewin are common-law tort claims and a contract claim, and because she has not identified any statute that would give her a right to seek punitive damages from Defendant Lewin on any of her claims against him, punitive damages are not available. See e.g., Hood v. City of Boston, 891 F. Supp. 51, 53 (D. Mass. 1995) ("The law of the Commonwealth, on which plaintiff relies for his state law claims, does not allow for punitive damages for common law torts . . . ."); DeRose v. Putnam Mgmt. Co., 398 Mass. 205, 212 (1986) ("There are no punitive damages in contract."). A motion to dismiss is an appropriate mechanism for striking untenable claims for relief. Beebe v. Williams Coll., 430 F. Supp. 2d 18, 22 (D. Mass. 2006). Because no claim for punitive damages

can lie against Lewin, the Court must dismiss all claims for punitive damages alleged in the complaint.

## IV.    CONCLUSION

The Plaintiff has failed to allege facts that support her claims against Lewin. She has identified no duty that Lewin owed her in order to support her claims of negligence. She has not alleged the type of extreme and outrageous conduct to support a claim for intentional infliction of emotional distress. She has not alleged facts to demonstrate the existence of a contract between her and Lewin, or that she has any claim arising out of the contract between Lewin and MIT. And she has not alleged *any* facts that relate to the elements of a claim for assault. Moreover, Plaintiff has not identified any statute that would allow her to recover punitive damages if, in fact, she had properly alleged any claims against Lewin. For the foregoing reasons, the Court must dismiss the claims against Lewin.

RESPECTFULLY SUBMITTED,

WALTER LEWIN
By his attorneys,

/s/ Rachel Stroup
Norman Zalkind (BBO #538880)
nzalkind@zalkindlaw.com
Rachel Stroup (BBO #667410)
rstroup@zalkindlaw.com
Naomi Shatz (BBO #677637)
nshatz@zalkindlaw.com
Zalkind Duncan & Bernstein LLP
65a Atlantic Avenue
Boston, MA 02110
(617) 742-6020

Dated: May 12, 2017

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)**

I hereby certify that I have attempted to confer with Plaintiff's counsel in a good faith effort to resolve or narrow the issues raised in this motion.

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon all attorneys of record by electronic filing on May 12, 2017.


/s/ Rachel Stroup_____
Rachel Stroup