# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FAIZA HARBI, | ) |
|  | ) |
| Plaintiff | ) |
|  | ) |
| v. | ) |
|  | ) |
|  | ) |
| MASSACHUSETTS INSTITUTE OF | ) |
| TECHNOLOGY, et.al., | ) |
|  | ) |
| Defendants | ) |
|  | ) |

CIVIL ACTION NO. 1:16-cv-12394-FDS

**(Leave to file granted 5/22/17)**

## MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

## I.    INTRODUCTION.

Plaintiff, a resident of France, alleges that Walter Lewin, a former Massachusetts Institute of Technology ("MIT") professor emeritus, engaged in sexually explicit communications with her over the internet while she was enrolled in an online course he taught. The course was offered by edX, an independent non-profit organization which offers massive open online courses ("MOOCs") from a number of colleges and universities, including MIT, to millions of global online learners with internet access. When plaintiff reported the alleged misconduct by Lewin to MIT, MIT responded immediately by conducting an investigation, and as a result of the investigators' findings, severed all ties with Lewin.

Nevertheless, two years later, plaintiff brought this suit against MIT alleging violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq. ("Title IX") and common law claims of negligence and negligent infliction of emotional distress. When MIT moved to dismiss the Complaint (Docket No. 28), plaintiff amended her complaint, asserting two new claims against MIT: an allegation that MIT violated G.L. c. 214 § 1C (a statute creating a

right to sue in court for sexual harassment in certain circumstances) and breach of contract. Like her original complaint, plaintiff's amended complaint should be dismissed for the following reasons:

- *First*, plaintiff has no standing to assert a claim under Title IX because she does not allege that she had any contact with Lewin in the United States, or even that she has ever been to the United States. Title IX extends statutory protection only to "a person in the United States."

- *Second*, plaintiff has not stated a cognizable Title IX claim because she has not alleged any facts that MIT acted with "deliberate indifference" toward her. Plaintiff readily admits that MIT investigated her complaint about Lewin as soon as she reported it and promptly severed all ties with Lewin following the investigation. Plaintiff does not allege that Lewin engaged in any misconduct after she complained to MIT.

- *Third*, plaintiff's claim that MIT violated G. L. c. 214, § 1C must fail because she did not timely file a charge with the Massachusetts Commission Against Discrimination before bringing suit. Dismissal is also required because plaintiff has failed to allege any facts that MIT acted with deliberate indifference.

- *Fourth*, plaintiff's negligence claims fail as a matter of law because G. L. c. 214, § 1C creates the exclusive remedy for sexual harassment claims in education institutions and because MIT did not have a legal duty to the plaintiff because the alleged misconduct was not reasonably foreseeable to MIT; and

- *Fifth*, plaintiff's breach of contract claim fails because it too is foreclosed by G. L. c. 214, § 1C and because she does not allege facts sufficient to establish that she had a contract with MIT or that MIT breached any contract she contends existed.

## II.    THE ALLEGATIONS IN THE COMPLAINT[1]

Plaintiff Faiza Harbi resides in France. Compl. ¶ 1.[2] In August 2013, plaintiff enrolled in an online course, "For the Love of Physics," offered by MIT on the edX platform, a nonprofit corporation that offers MOOCs from a number of educational institutions to millions of learners across the globe. The plaintiff alleges that Walter Lewin, a former MIT professor emeritus, whom she has also named as a defendant in this case, taught this online course. Compl. ¶6. The

---

[1] Some additional facts relevant to specific claims are described in the sections of this Memorandum related directly to those claims.

[2] This Memorandum refers to the Amended Complaint as "Compl."

course began in September 2013 and ran through January 15, 2014. Compl. ¶ 8. Plaintiff alleges that after she and Lewin exchanged private contact information with each other over Facebook, Lewin began sending her private, sexually explicit communications by email, electronic private messenger, and Skype. Plaintiff's complaint alleges that those communications began in early December 2013; plaintiff responded, according to the complaint, by sending Lewin "revealing photographs." Compl. ¶¶ 21, 23. Plaintiff does not allege she ever met Lewin in person; the alleged misconduct occurred exclusively over the internet. Nor does plaintiff allege that Lewin's conduct occurred in or as part of the course, or over the edX platform. The plaintiff states that she first reported Lewin's conduct to MIT on October 7, 2014. Compl. ¶ 30. The plaintiff likewise does not allege that Lewin continued to engage in sexual misconduct after she reported it to MIT or that MIT ignored or failed to take any action after receiving her complaint. To the contrary, plaintiff acknowledges:

- After she reported her concerns to MIT on October 7, 2014, MIT "determined that Harbi's complaint warranted a formal review..." Compl. ¶ 30;

- "MIT conducted an investigation and on December 2, 2014, informed Harbi of the results" Compl. ¶ 31; and

- MIT "severed ties with Lewin and prohibited him from accessing MIT resources." Compl. ¶ 35.

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice," and the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.; see also Doe v.*

*Emerson Coll.*, 153 F. Supp. 3d 506, 513 (D. Mass. 2015) (granting motion for judgment on the pleadings and stating the legal standard is "much like a Rule 12(b)(6) motion to dismiss").

## IV.   ARGUMENT

### A.   Plaintiff Fails to State a Claim Under Title IX.

*1. Plaintiff Lacks Statutory Standing Under Title IX.*

Plaintiff lives in France.[3] She does not allege that she was in the United States at any time. See Compl. ¶ 1. This alone is fatal to plaintiff's Title IX claim. Under Title IX, "[n]o person *in the United States* shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (emphasis added). Absent a "clearly expressed" intention by Congress, courts must not expand the scope of a federal statute beyond national boundaries. *Carnero v. Bos. Sci. Corp.*, 433 F.3d 1, 7 (1st Cir. 2006). MIT takes allegations of misconduct seriously, including those by online learners in an MIT MOOC offered on edX (as evidenced by its prompt investigation in this case). But plaintiff has no legal remedy under Title IX because she does not live in the United States, did not participate in the course while in the United States, and was not allegedly harmed in the United States. Based on a lack of statutory standing alone, plaintiff's Title IX claim must be dismissed.

a. Courts Should Dismiss Claims When Plaintiff Lacks Statutory Standing.

"When a plaintiff alleges injury to rights conferred by a statute, two separate standing-related inquiries pertain: whether the plaintiff has Article III standing (constitutional standing) and whether the statute gives that plaintiff authority to sue (statutory standing)." *Katz v. Pershing*, LLC, 672 F.3d 64, 75 (1st Cir. 2012). Here, plaintiff lacks statutory standing. Statutory standing asks "whether the statute gives that plaintiff authority to sue," a question that "goes to

---

[3] While not necessary to decide this Motion, MIT understands that Ms. Harbi is approximately 34 years old.

the merits of the claim." *Merriam v. Demoulas*, No. 11-10577-RWZ, 2013 U.S. Dist. LEXIS 77600, at *13 (D. Mass. June 3, 2013). It may properly be reviewed under a 12(b)(6) motion. *See Katz v. Pershing, LLC*, 806 F. Supp. 2d 452, 455 (D. Mass. 2011) (dismissing 93A claim under 12(b)(6) for lack of statutory standing). When, as here, a plaintiff lacks statutory standing, her complaint must be dismissed. *Id.*

b. Congress Expressly Limited the Scope of Title IX to "Person[s] in the United States."

Title IX provides that: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Since plaintiff lives in France and does not allege she was in the United States when Lewin engaged in any act described in the complaint, the plain language of Title IX requires that the complaint be dismissed. *Phillips v. St. George's Univ.*, No. 07-CV-1555, 2007 U.S. Dist. LEXIS 84674, at *13-14 (E.D.N.Y. Nov. 15, 2007) ("[T]he plain language of Title IX affirmatively indicates Congress's intent that the statute not apply extraterritorially... Title IX's use of 'person in the United States' suggests that the statute applies only to persons located in the United States… there is no contrary language—much less 'clear evidence'—in the statute to suggest Congress intended Title IX to apply extraterritorially.") (citing *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244, 258 (1991)).

Moreover, this plain language must be read with the added backdrop of the strong presumption that Congress generally does not intend federal statutes to apply extraterritorially. *Phillips*, 2007 U.S. Dist. LEXIS 84674, at *13-14 (E.D.N.Y. Nov. 15, 2007) ("Congress' awareness of the need to make a clear statement that a statute applies overseas is amply demonstrated by the numerous occasions on which it has expressly legislated the extraterritorial application of a statute."); see also *Carnero v. Bos. Sci. Corp.*, 433 F.3d at 6. In *Carnero*, the

5

B4685543.2

First Circuit declined to extend whistle-blower protections of Sarbanes-Oxley to a foreign worker of a foreign subsidiary of a covered corporation. *Id.* "The Supreme Court stated…that a court is to assume that Congress legislates with an awareness of the presumption against extraterritorial application…Thus, the presumption can be overcome only if there is an 'affirmative intention of the Congress clearly expressed.'" *Id.* at 7(internal citations omitted); *see Smith v. United States*, 507 U.S. 197, 204 (1993) (requiring "clear evidence of congressional intent" to apply statute extraterritorially).

Here, plaintiff has no basis to contend that Congress intended Title IX to protect individuals located outside the United States participating in open access online learning programs on their computers. *See Phillips*, 2007 U.S. Dist. LEXIS 84674, at *13-14 (Title IX does not protect a plaintiff from harm that occurred in Grenada).[4]

> 2.  *Plaintiff's Complaint Fails to Make Plausible Allegations That MIT Acted with Deliberate Indifference to Her After Receiving Notice of Her Complaint.*

The Supreme Court has held that Title IX creates an implied private cause of action only in "certain limited circumstances." *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639-40, 643 (1999). To state a claim under Title IX, whether quid pro quo or hostile environment, "an

---

[4]There is only one reported case holding that Title IX's protections extend extraterritorially. That case, however, is readily distinguishable. In *King v. Bd. Of Control*, 221 F. Supp. 2d 783 (E.D. Mich. 2002), a judge in the Eastern District of Michigan considered Eastern Michigan University students' claims that they were sexually harassed by fellow students, including a student paid as an advisor, in a five-week, university-run, study abroad program in South Africa. The Court held that Title IX did apply to the university's program in South Africa because "study abroad programs are operations of the University which are explicitly covered by Title IX and which necessarily require students to leave U.S. territory in order to pursue their education." *Id.* at 788 (emphasis in original). *King* thus involved at its heart, a United States educational program, designed to serve undergraduates who were ordinarily students "in the United States." Here, in contrast, plaintiff never participated in an educational program "in the United States." Indeed, plaintiff does not allege that she was ever enrolled at MIT in the United States, and plaintiff has no basis to contend that Congress intended Title IX to protect individuals anywhere in the world engaged in online learning programs on their computers. *Compare Phillips v. St. George's Univ.*, 2007 U.S. Dist. LEXIS 84674, at *13-15 (Title IX does not protect a plaintiff from harm that occurred in Grenada; "Even assuming the *King* outcome was correct on its facts, it is not persuasive given the distinguishable facts of this case").

official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [federal funds] recipient's behalf [must have] actual knowledge of discrimination in the recipient's programs" and the response to such knowledge "must amount to deliberate indifference to discrimination." *Id*. at 290. An institution cannot be held liable under Title IX "solely on principles of respondeat superior or constructive notice." *Gebser v. Lago Sch. Dist.*, 524 U.S. 274, 289 (1997). More is required. The institution's response must be "clearly unreasonable in light of the known circumstances." *Porto v. Town of Tewksbury*, 488 F.3d 67, 72-73 (1st Cir. 2007).

      a.    <u>Plaintiff Fails to Allege MIT Had Any Knowledge of Any Discriminatory Conduct by Lewin Prior to October 7, 2014.</u>

Plaintiff has not alleged that MIT had notice of Lewin's alleged misconduct toward her before she reported it to MIT on October 7, 2014. Plaintiff's conclusory allegation that MIT "kn[e]w or should have known" that Lewin was engaged in inappropriate conduct based upon statements he made during the investigation into plaintiff's report is insufficient to survive a motion to dismiss. Compl. ¶ 41. Plaintiff acknowledges that once MIT had actual notice of her allegations, it acted immediately. It reviewed documents she provided, conducted a comprehensive investigation, provided plaintiff and Lewin with a written report documenting the results of the investigation less than 60 days after her complaint, and severed all ties with Lewin. Compl. ¶¶ 30-35.

Nor does plaintiff make any factual allegations that MIT had notice, before plaintiff first complained about his conduct, of sexual harassment allegedly perpetrated by Lewin against others. Plaintiff alleges that MIT "knew or should have known" that Lewin was engaged in inappropriate conduct with students, Compl. ¶41, but provides absolutely no facts to support this allegation. To the contrary, plaintiff claims only that Lewin admitted, during the investigation

that *followed* plaintiff's complaint, that "this was not the first instance of sexual harassment perpetrated by him towards other women." Compl. ¶37. Plaintiff makes no allegations that MIT had prior knowledge of any alleged incidents, and the investigative report that plaintiff attaches to her complaint states that although plaintiff provided screenshots of Facebook communications allegedly between Lewin and other women, these women were not students in the online course and had no other relationship to MIT. Compl. Ex. A, at 6.[5] A complaint must recite facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

      b.     <u>MIT Was Not Deliberately Indifferent to Plaintiff's Complaint.</u>

To state a claim under Title IX a plaintiff must show that MIT "had actual knowledge of discrimination but must also plead that the defendant either "failed to act or exhibited deliberate indifference to it." *Bloomer v. Becker College*, No. 09-11342-FDS, 2010 U.S. Dist. LEXIS 82997, at *10 (D. Mass. Aug. 13, 2010), *citing Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998). Demonstrating deliberate indifference is a high bar that requires a finding that the "funding recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Porto*, 488 F.3d at 73. MIT's actions here—immediately initiating an

---

[5] This allegation is drawn from MIT's Confidential Report Regarding Investigative Review, which plaintiff attached as an exhibit to her Amended Complaint and which the Court can therefore consider in deciding this Motion. *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998) ("When, as now, a complaint's factual allegations are expressly linked to -- and admittedly dependent upon -- a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."). Page number citations are to the docket page numbers.

investigation after receiving the complaint and severing all ties with Lewin upon completion of its investigation—are, as a matter of law, not deliberately indifferent but, instead, clearly reasonable and appropriate.

In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court held that an educational institution is "deliberately indifferent" only when the action the school took was "clearly unreasonable in light of the known circumstances." 526 U.S. 629, 648-49 (1999). *Davis* involved alleged peer-to-peer harassment of an elementary school student by a fellow student, and the Supreme Court, reversing the Eleventh Circuit's dismissal of the Title IX claim, found that allegations that the school board did not respond and did not investigate after five months of harassment complaints may have suggested deliberate indifference. *Id*. at 649. However, the Supreme Court made it clear that "[i]n an appropriate case, there is no reason why courts, on a motion to dismiss...could not identify a response as not 'clearly unreasonable' as a matter of law." *Id*.

The First Circuit has likewise set a high bar for a showing of deliberate indifference: "[d]eliberate indifference requires more than a showing that the institution's response to harassment was less than ideal." *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 168 (1st Cir. 2007), rev'd on other grounds, 555 U.S. 246 (2009). In *Fitzgerald*, an elementary school student complained of peer harassment on a school bus. Upon learning of the complaint, the school investigated and offered remedial actions, including switching the student to a different bus. *Id*. at 169-70. The First Circuit affirmed summary judgment in favor of the school on the Title IX claim, finding that the school did not act with deliberate indifference because it "reacted promptly to the complaint; commenced a full-scale investigation; and pursued the investigation diligently." *Id*. at 174. Noting that the test for deliberate indifference is objective, the First

Circuit held: "Title IX does not require educational institutions to take heroic measures, [or] to perform flawless investigations." *Id*. Rather, an institution is only deliberately indifferent when "the institution's response, evaluated in light of the known circumstances, is so deficient as to be clearly unreasonable." *Id*.

Plaintiff's own words in her complaint demonstrate that her claim falls far short of what is required to assert a claim against MIT for a violation of Title IX. In fact, the allegations support MIT's contention that it acted deliberately and reasonably. Plaintiff concedes that MIT immediately commenced an investigation upon learning of her complaint, reached a conclusion within 60 days, shared the results of the investigation with the plaintiff, and severed all ties with Lewin.[6]

While acknowledging all of this action by MIT in her complaint, Plaintiff contends that MIT was deliberately indifferent because it failed to provide her with remedial assistance, including counseling, and because its investigatory report "did not indicate that [MIT] would initiate any type of educational training sessions for their instructors, employees, staff or students to educate them on sexual abuse on campus and in online course work..." Compl. ¶ 36. However, even if true for purposes of this motion, Title IX does not require particular remedial action; rather, it requires that a recipient "merely respond to known [] harassment in a manner that is not clearly unreasonable." *Davis*, 526 U.S. at 648-49. "[A] claim that the school system could or should have done more is insufficient to establish deliberate indifference." *See Porto*, 488 F.3d at 73 (reversing the judgment of the district court and finding that even where the steps the school

---

[6] Plaintiff's complaint repeatedly cites statements and guidance from the Department of Education's Office of Civil Rights ("OCR") about Title IX, but these pronouncements do not have the force of law and create no legal obligations. The statements and guidance have no relevance here, and plaintiff makes no allegations that MIT handled her complaint in a way that contradicts the OCR guidance. Separately, MIT has filed a Motion to Strike these allegations.

B4685543.2

system took in response to allegations of peer-on-peer harassment were ineffective, the school system did not act with deliberate indifference).

Conducting a formal investigation of the concerns raised by plaintiff, reporting the results of the investigation within 60 days, making a finding of a policy violation, and terminating any relationship with the alleged harasser is anything but "clearly unreasonable." In fact, it is eminently reasonable. *See Fitzgerald*, 504 F.3d at 174-75, *see also Brown v. Lamar County Sch. Dist.*, No. 5:06-cv-294, 2008 U.S. Dist. LEXIS 75653, at *11 (M.D. Ga. Sept. 30, 2008) (finding no deliberate indifference when school promptly conducted investigation into allegations of teacher showing indecent photographs to students and at the investigation's conclusion terminated the teacher's employment). To find otherwise and subject MIT to liability under Title IX would contradict the Supreme Court's intention: "under the Supreme Court's formula, the plaintiff in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct, not just actual knowledge of the risk of misconduct, and must also prove that the officials having that knowledge decided not to act on it." *Delgado v. Stegall*, 367 F.3d 668, 672 (7th Cir. 2004) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998)).

**B.      Plaintiff's G.L. c. 214, §1C Claim Should Also Be Dismissed.**

Count VIII alleges that MIT violated plaintiff's rights under G.L. c. 214, §1C, a remedial statute declaring that "[a] person shall have the right to be free from sexual harassment, as defined in [G.L. c. 151B] and [G.L. c. 151C]" and granting plaintiffs the right to sue to enforce that right. G. L. c. 151B prohibits sexual harassment in employment and therefore does not apply here. Plaintiff relies for substantive relief on G.L c. 151C, which provides: "It shall be an unfair educational practice for an educational institution… to sexually harass students in any program or course of study in any educational institution." M.G.L. c. 151C §2(g); *see also Bloomer*, 2010

U.S. Dist. LEXIS 82997, at *19 (quoting statute). As this Court held in *Bloomer*, c. 151C is "the equivalent of Title IX under Massachusetts law." *Id.*

Plaintiff's claim under c. 214, §1C should be dismissed for two reasons. First, plaintiff failed to file a charge with the Massachusetts Commission Against Discrimination ("MCAD"), as the statute requires, before filing her amended complaint in this Court. Second, plaintiff's contention that G.L. c. 151C imposes vicarious liability on MIT for Lewin's actions is mistaken; that statute, as the Massachusetts analogue to Title IX, should be read to require the plaintiff to allege plausibly that MIT acted with actual knowledge of Lewin's actions and deliberate indifference, and plaintiff has failed to do so here.

1. Plaintiff Failure to File a Charge with the MCAD Bars Count VIII.

Plaintiff's claim under c. 214, §1C must fail because she has skipped an essential step required by that statute: before proceeding in court, a plaintiff must first file a timely charge with the Massachusetts Commission Against Discrimination. As c. 214, §1C plainly states: "No claim under this section that is also actionable under chapter 151B or chapter 151C shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B." Thus, as Judge Casper ruled last year in *Harrington v. City of Attleboro,* 172 F. Supp. 3d 337, 351 (D. Mass. 2016), a plaintiff seeking damages under c. 214, §1C "must satisfy the administrative exhaustion requirement...made applicable to c. 151C under Mass. Gen. L. c. 214, § 1C." In *Harrington*, the Court held that plaintiffs' allegation that they had timely filed a charge of discrimination with MCAD and that the agency had granted them permission to withdraw the charge to file a claim in court was sufficient to satisfy this requirement. *Id.*; *see also Bloomer*, 2010 U.S. Dist. LEXIS 82997, at *8 (in addressing claim under c. 214, §1C, Court noted plaintiff's prior filing at MCAD); *Doe v. Williston Northampton Sch.*, 766 F. Supp. 2d 310, 311 (D. Mass 2011) (same). Here, plaintiff has not alleged (and to

MIT's knowledge, could not allege) that she filed a charge of discrimination with the MCAD before bringing this suit.

MIT recognizes that Judge Woodlock recently reached a contrary result in *Doe v. Bradshaw,* 203 F. Supp. 3d 168, 188-190 (D. Mass. Aug. 26, 2016). *Bradshaw* held that c. 214, §1C does not impose an administrative exhaustion requirement for sexual harassment claims brought by students under c. 151C except in the circumstances defined by 151C, §3a, which applies to students "seeking admission as a student to any educational institution, or enrolled as a student in a vocational training institution." *Id* at 190. Respectfully, *Bradshaw* is mistaken for at least three reasons.

First, in concluding that c. 214, §1C did not require administrative exhaustion, *Bradshaw* relied on the Massachusetts Appeals Court's opinion in *Morrison v. Northern Essex Community College*, 56 Mass App. Ct. 784, 786 n.6 (2002). *Morrison* noted in a footnote: "We proceed on the assumption that c. 151C permits individuals in the position of plaintiffs to make a claim for damages or injunctive relief, in the first instance, in the Superior Court." *Id*. But *Morrison* interpreted an earlier, different version of c. 214, §1C; not the one now in effect. Effective November 5, 2002, the Massachusetts legislature amended c. 214, §1C to include the language that MIT relies on here: "No claim under this section that is actionable under chapter 151B or chapter 151C shall be brought...unless a complaint was timely filed with the Massachusetts commission against discrimination..." This amendment effectively rendered *Morrison's* reasoning on this point ("c. 151C, in contrast to c. 151B, [does not] state that the provisions for the filing of sexual harassment claims with [MCAD] are exclusive") obsolete. The statute now plainly requires a claimant to go to the MCAD first.[7]

---

[7] Counsel in *Bradshaw* does not appear to have brought the timing of c. 214's amendment to the Court's attention.

B4685543.2

Second, in concluding that 214, §1C did not require administrative exhaustion, *Bradshaw* relied on this Court's opinion in *Bloomer v. Becker College. Bradshaw*, 203 F. Supp. 3d at 190, (citing *Bloomer,* 2010 U.S. Dist. LEXIS 82997, at \*6). But *Bloomer* did *not* hold that 214, §1C contained no administrative exhaustion requirement; as noted above, the plaintiff in *Bloomer* had in fact gone to the MCAD before going to federal court. 2010 U.S. Dist. LEXIS 82997, at \*8. *Bloomer's* focus—at least in the part of the opinion cited by *Bradshaw*—concerned the statute of limitations for bringing a claim under c. 214. Here, MIT does not contend—at least at the motion to dismiss stage—that Count VIII is untimely.

Third, in concluding that c. 214, §1C did not require administrative exhaustion, *Bradshaw* also concluded that G.L. c. 151C, §3 only "allows for complaints to the commission by persons seeking admission as a student to any educational institution, or enrolled as a student in a vocational training institution." 203 F. Supp. 3d at 190. But this reading of the statute is too narrow, as Judge Ponsor held in *Doe v. Williston Northampton Sch.*, 766 F. Supp. 2d 310, 312-13 (D. Mass 2011), where he rejected the contention that claims of sexual harassment outside the context of admissions decisions or vocational training schools could not be brought under c. 151C. There, the Court pointed to four distinct reasons why *all* complaints of sexual harassment in educational institutions were actionable under c. 151C:[8]

- *First,* c. 151C, §2(g)'s plain language ("It shall be an unfair educational practice for an educational institution—To sexually harass students in any program or course of study in any educational institution") should be given its "ordinary meaning." To suggest that it should be limited to discrimination in the application process, or at to vocational program, was inconsistent with the statute's broad reference to harassment "in *any* program or course of study" in "*any* educational institution." *Id.* at 312 (emphasis added).

---

[8] This is relevant to the question of administrative exhaustion (which Judge Ponsor was not required to address because the plaintiff in *Williston Northampton* had in fact filed with the MCAD first) because c. 214 §1C's plain language requiring that plaintiffs first seek relief with the MCAD applies to claims "actionable under" c. 151C.

- *Second*, imposing the limits of c. 151C, §3(a) on c. 151C, §2(g) would fly in the face of several important principles of statutory construction including the settled maxims that courts should avoid interpreting related statutes to be in conflict and should likewise accord meaning to "all words in a statute." *Id*. at 312-313.

- *Third,* "the Legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one. Because §2(g) was enacted after §3(a) this court must presume that the legislature was aware of §3(a) and did not intend for the two provisions to conflict." *Id*. at 313.

- *Fourth,* "there is no indication, in statutory history or existing case law, that §3(a) was meant to impose a substantive limitation on the rest of the statute." *Id.*

Judge Ponsor's careful analysis should carry the day here: claims of sexual harassment in education are actionable under c. 151C.[9] Consequently, given c. 214, §1C's plain language requiring administrative exhaustion for claims "actionable under" c. 151C, the court should conclude that plaintiff's failure to allege that she filed a timely charge with the MCAD bars her from proceeding with her c. 214, §1C claim here.

    2.   <u>The Court Should Reject Plaintiff's Contention that G.L. c. 214, §1C Imposes Strict, Vicarious Liability on MIT for Lewin's Alleged Actions.</u>

Plaintiff contends that, in contrast to Title IX, c. 214, §1C imposes strict, vicarious liability on MIT for Lewin's action. This contention presents a question no Massachusetts court has decided. *See Morrison v. Northern Essex Community College*, 56 Mass App. Ct. at 786 n. 17 (2002) ("We also do not address whether a c. 151C claim against an educational institution requires that its administrators have knowledge of harassment perpetrated by its coaches or teachers, a requirement imposed on claims under Title IX"); *see also Bradshaw,* 203 F. Supp. 3d

---

[9]In *Shervin v. Partners Healthcare Sys., Inc.,* No. 10-cv-10601-RWZ, 2010 U.S. Dist. LEXIS 132610 (D. Mass. Dec. 15, 2010*),* the Court held in a brief memorandum order, without significant analysis, that G.L. c. 151C applied to discrimination in admissions and vocational schools. That ruling was of little consequence to that case; as the court noted, the plaintiff was an employee of at least one of the defendants and was therefore "entitled to the protections set forth in Mass. Gen. Laws ch. 151B." In *Shervin,* plaintiff had first taken her discrimination claims to the MCAD.

at 189 ("the Massachusetts Courts have not answered this question for either chapter 214 or chapter 151C"); *Bloomer*, 2010 U.S. Dist. LEXIS 82997, at *29 (same).

Because plaintiff failed to file a timely MCAD charge, this Court need not decide this question here. But should the Court choose to address the issue, the Court should conclude that the Massachusetts legislature did not intend either c. 214, §1C or c. 151C to work such a remarkable sea change in Massachusetts law.

On December 9, 1986, the Massachusetts legislature enacted "An Act prohibiting sexual harassment," St. 1986, c. 588. That Act created c. 214C, a remedial statute, providing a cause of action for victims of sexual harassment, and amended both G. L. c. 151C, relating to discrimination in education, and G.L. c. 151B, relating to discrimination in employment, defining the substantive law of sexual harassment. *Lowery v. Klemm*, 446 Mass. at 574. The amendments to G.L. c. 151B and G.L. c. 151C each made sexual harassment a form of unlawful discrimination and each defined sexual harassment in nearly identical terms.[10] *Id.* The two statutes parted ways, however, in defining the circumstances under which employers, on the one hand, and educational institutions, on the other, could be held responsible for sexual harassment.

---

[10]G.L. c. 151B §1(18) provides: "The term 'sexual harassment' shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment. Discrimination on the basis of sex shall include, but not be limited to, sexual harassment.

G.L. c. 151C §2(e) defined "sexual harassment" as: "any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when:— (i)submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement services or as a basis for the evaluation of academic achievement; or (ii) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment."

M.G.L. c. 151B §4(16A) set the rule for employees. It provided: "It shall be an unlawful practice… for an employer, *personally or through its agents,* to sexually harass any employee*."* (emphasis added). This statutory language thus specifically provides that an employer can be held liable, vicariously, for sexual harassment committed by its agents. Indeed, when the Supreme Judicial Court first interpreted the sexual harassment provisions in c. 151B, and confirmed that c. 151B made employers vicariously liable for sexual harassment by supervisory employees, it placed significant emphasis on the "personally or through its agents" language in the statute. *See College-Town Division of Interco, Inc. v. MCAD*, 400 Mass. 156, 165 (1987) (Because the statute's language contained the phrase "personally or through its agents"...[i]t is clear that the Legislature intended that an employer be liable for discrimination committed by those on whom it confers authority").

In contrast, the legislature made a very different choice the same day when it chose to define how an educational institution could be held liable for sexual harassment. G.L. c. 151C §2(g) provides: "It shall be an unfair educational practice *for an educational institution*…to sexually harass students in any program or course of study in any educational institution." This language parallels the language in c. 151B closely with one exception: the Legislature chose to omit the phrase "personally or through its agents" when it enacted c. 151C. The difference in the language between these two statutes, enacted at the same time, requires a court interpreting the statutes to apply a basic principle of statutory construction: "Where 'different words with different meaning' are used in different sections of a statute, 'they cannot be used interchangeably, but must be construed in relation to one another.'" *McLaurin v. Holyoke*, 475 Mass. 231, 241 (2016), quoting *Commonwealth v. Millican*, 449 Mass. 298, 301 (2007). Thus, the Legislature's deliberate decision *not* to make educational institutions liable "through [their]

agents" must be given effect, a principle that leads directly to the conclusion that the Legislature did not intend to make educational institutions vicariously liable for sexual harassment by their employees.

This view is also consistent with basic background principles of Massachusetts common law, which provides important context for the proper interpretation of c. 151C. Absent specific legislative direction to the contrary, an employer may only be held vicariously liable for the tortious conduct of an employee, including the employee's intentional conduct, "if the tortious act or acts were committed 'within the scope of employment.'" *Envisn, Inc. v. Davis*, No. 11-12246-FDS, 2012 U.S. Dist. LEXIS 66072, at *10 (D. Mass. May 11, 2012) (citing *Worcester Ins. Co. v. Fells Acres Day School, Inc*. (1990)); see also *Dias v. Brigham Med. Assocs*., *Inc.*, 438 Mass. 317, 321–22 (2002) (citing <u>Restatement (Third) of Agency</u> § 2.04). "Conduct of an agent is within the scope of employment if 'it is the kind he is employed to perform, if it occurs substantially within the authorized time and space limits, and if it is motivated, at least in part, by a purpose to serve the employer.'" *Envisn, Inc.*, 2012 U.S. Dist. LEXIS 66072, at *10 (citing *Wang Labs., Inc. v. Bus. Incentives Inc.,* 398 Mass. 854, 859 (1986)).

This common law background triggers the application of another basic canon of statutory construction: "'a statute is not to be interpreted as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed.'" *Riley v. Davison*, 381 Mass. 432, 438-39 (1980), quoting *Pineo v. White,* 320 Mass. 487, 491 (1946) (Absent explicit language, legislature did not intend to abrogate the doctrine of assumption of the risk); *see also Globe Newspaper Co., petitioner*, 461 Mass. 113, 117 (2011) ("In interpreting a statute, we presume that when the Legislature enacts a law it is aware of the statutory and common law that governed the matter in which it legislates.")

18

Here, the 1986 legislative amendment to c. 151B explicitly chose to depart from this common law background by making employers liable for sexual harassment of employees by supervisors "personally or through [their] agents." In contrast, the Legislature chose not to include language departing from basic common law principles when defining the limits of educational institutions' liability for sexual harassment. Outside the employment context (where c. 151B applies), universities should therefore not be held liable for sexual misconduct toward a student by an employee absent evidence that the alleged misconduct was within the employee's scope of employment.

Imposing strict vicarious liability is also inconsistent with the language of c. 151C, which imposes liability when an "educational institution" engages in sexual harassment. Absent prior knowledge of a faculty member's harassing conduct, or evidence that, in the face of such conduct, the university exhibited deliberate indifference to a complainant's plight, the institution *itself* can hardly be said to engage in or endorse sexual harassment. Interpreting c. 151C consistently with Title IX, its federal counterpart, embraces fully the plain and logical meaning of c. 151C—that an "educational institution" is liable for sexual harassment only when the institution itself fails to prevent a known problem or properly respond to one that has been brought to its attention.

MIT recognizes that, here too, *Doe v. Bradshaw* reached a different result "at this [summary judgment] stage." 203 F. Supp. 3d at 190. But it does not appear that the defendant in *Bradshaw* argued that the Legislature's decision not to state explicitly an intention to depart from common law principles should be given weight in the Court's decision about how c. 151C should be interpreted. Moreover, Judge Woodlock's decision concerning c. 151C did not, in the final analysis, control the outcome of the summary judgment motion the Court was called upon to

decide: the Court's opinion made clear that the case could not be resolved on summary judgment for reasons unrelated to c. 151C. *Id.*[11]

## C.   Plaintiff's Negligence Claim Also Fails as a Matter of Law.

Plaintiff's negligence claim fails for three reasons, each requiring dismissal: (1) G. L. 214, § 1C provides the exclusive remedy for claims of sexual harassment and forecloses common law claims; (2) MIT is not vicariously liable for Lewin's misconduct, and (2) MIT had no legal duty to the plaintiff to prevent misconduct that was not foreseeable to MIT.

1. *G.L. c. 214, § 1C Provides the Exclusive Remedy for Sexual Harassment Claims, Foreclosing Plaintiff's Common Law Claims.*

The Massachusetts Supreme Judicial Court has twice made clear that 214, § 1C is the exclusive remedy for plaintiffs pressing sexual harassment claims in court. *Lowery v. Klemm*, 446 Mass. 572, 576 (2006) ("when G.L. c. 214, § 1C, applies to a claim of sexual harassment, it is the exclusive remedy: plaintiffs may not proceed with other statutory or common-law actions for sexual harassment"); *Guzman v. Lowinger*, 422 Mass. 570, 572 (Mass. 1996) (same). *But see Rinsky v. Trs. of Boston Univ.*, No. 10cv10779-NG, 2010 U.S. Dist. Lexis 136876, at *21 (D. Mass. Dec. 27, 2010) (declining to dismiss claims based on exclusivity).[12]

2. *MIT Is Not Vicariously Liable for Lewin's Alleged Misconduct.*

---

[11] Because the scope of c. 151C is a matter no Massachusetts state court has addressed, the Court *could* certify this question to the Massachusetts Supreme Judicial Court under SJC Rule 1:03. If the Court is uncertain either about how to interpret that statute (and, to be clear, MIT does not suggest that the Court *should* be uncertain), certifying the question to the SJC would wisely spare the parties the costs of discovery, and the Court the burden of supervising that discovery—particularly, of course, if plaintiff's other claims are dismissed.

[12] *Rinsky* relied on the following language in *Morrison v. N. Essex Cmty. Coll*, 56 Mass. App. Ct. 784, 786 n.6 (2002) ("Nor does c. 151C, in contrast to c. 151C, state that the provisions for the filing of sexual harassment claims with the Massachusetts Commission Against Discrimination (MCAD) are exclusive." 2010 U.S. Dist. Lexis 136876, at *21. But, as noted above, Morrison was decided before 2002 statutory amendment to c. 214, § 1C stating: "No claim under this section that is also actionable under chapter 151B or chapter 151C shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B."

To the extent that plaintiff is seeking to hold MIT liable based on Lewin's actions, this claim must fail. As argued above, under established principles of Massachusetts common law, an employer may only be held vicariously liable for the tortious conduct of an employee, including the employee's intentional conduct, "if the tortious act or acts were committed 'within the scope of employment.'" *Envisn, Inc.*, 2013 U.S. Dist. LEXIS 66072, at \*10 (citing *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. at 404); *see also Dias v. Brigham Med. Assocs., Inc.*, 438 Mass at 321–22 (citing Restatement (Third) of Agency § 2.04). Here, any effort by the plaintiff to seek to hold MIT vicariously liable for sexual harassment by Lewin runs counter to decades of case law.[13] Plaintiff's own allegations demonstrate that Lewin's alleged misconduct was outside the scope of his employment with MIT and therefore she cannot make a plausible claim that MIT is vicariously liable for Lewin's conduct.

3.      *MIT Had No Legal Duty to Prevent Lewin from Engaging in Misconduct That Was Not Reasonably Foreseeable to MIT.*

Plaintiff's direct claims of negligence against MIT also fail because she has not pled sufficient facts to establish that MIT owed her a duty to prevent the kind of harm Lewin allegedly caused. Massachusetts law makes clear that as a general matter, a university is not liable for harm caused by the intentional acts of others. *See Kavanaugh*, 440 Mass. at 201 ("As a general rule, there is no duty to protect another from the criminal conduct of a third party."). Massachusetts courts have also been careful to limit the scope of a university's duty to protect individuals, even students on campus, from harm. *Doe v. Trs. of Bos. Coll.*, No. 15-cv-10790, 2016 U.S. Dist. LEXIS 137777, at \*97 (D. Mass. Oct. 4, 2016) ("[A]mple case law declines to expand the duty of care owed to students by universities."). Massachusetts courts commonly invoke the doctrine of foreseeability as a way to cabin a university's potential tort liability to

---

[13] *See* cases cited, *supra*, at 18.

B4685543.2

appropriate bounds: as the SJC has held, any duty to prevent harm "extends only to those acts that are reasonably foreseeable." *Kavanagh v. Trs. of Boston Univ.*, 440 Mass. 195, 203-04 (2003); *see also Mullins v. Pine Manor College*, 389 Mass. 47, 52 (1982) (finding colleges must exercise "reasonable care… to protect resident students from foreseeable harm"). As a matter of law, a university cannot be held liable for the intentional misconduct of others unless the university could reasonably foresee such conduct. *Emerson Coll.*, 153 F. Supp. 3d at 515—even if the conduct was that of the university's own employees. As this Court has held, "[e]mployers are obligated to ensure that their employees do not inflict *foreseeable* harm upon a *foreseeable* class of plaintiffs…That duty, however, is not boundless." *Doe v. Medeiros*, 168 F. Supp. 3d 347, 353 (D. Mass. 2016) (emphasis added). Plaintiff's claim that her status of one of thousands of online learners creates a "special relationship" with MIT does not require the Court to permit her claim to proceed. This allegation would extend Massachusetts law farther than any court has ever done, *see*, *e.g., Mullins v. Pine Manor College*, 389 Mass. 47, and rob the idea of a "special" relationship of any meaning.

To establish that MIT had a duty to protect plaintiff from Lewin's alleged misconduct, plaintiff must allege that during the course of Lewin's employment MIT knew—or should have known—of conduct by Lewin that indicated his unfitness to teach an online MOOC course. *Lefebvre v. UMass Mem. Health Care*, No. 00-2491, 2004 Mass. Super. LEXIS 195, at *18 (Mass. Super. Ct. May 6, 2004) (noting negligence claim requires employer to have "sufficient notice" of risk employee poses); *Blavackas v. Worcester State College*, No. 95-02533, 1996 Mass. Super. LEXIS 295, at *7–9 (Mass. Super. Ct. Aug. 2, 1996) (dismissing on 12(b)(6) motion negligence claims because plaintiff alleged no prior complaints against or prior wrongdoing on the part of any employees). Here, plaintiff's complaint simply provides no

factual allegations to support her claim that the harm she allegedly suffered was reasonably foreseeable to MIT. *See Emerson Coll.*, 153 F. Supp. 3d at 515.

Plaintiff makes the conclusory assertion that MIT "knew or should have known" that Lewin would engage in the misconduct based on comments he made *after* plaintiff made her complaint. Compl. ¶ 41. But plaintiff fails to make a single, specific factual allegation to suggest MIT would have had any reason to have *foreseen* Lewin's alleged sexual misconduct. Her boilerplate formulations are simply insufficient to state a claim under Massachusetts law: "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original). And while generally, there is, of course, always a possibility that a professor may engage in sexual misconduct, possibility is not foreseeability. "Foreseeability must mean something more than awareness of the ever-present possibility" that someone will engage in misconduct. *Kavanaugh*, 440 Mass. at 203. Plaintiff's claim must be dismissed because her sole allegation concerning comments made by Lewin during the investigation about alleged communications of which MIT was unaware with women who had no connection to MIT does not amount to "specific information about [Lewin] suggesting a propensity to engage in [sexual misconduct], or some warning that [he] appeared headed toward such conduct." *Id.*

Last, plaintiff appears to suggest in her complaint that MIT has some duty or obligation from its adoption of policies intended to protect students at MIT from harassment. However, this is not the case. *See Emerson Coll.*, 153 F. Supp. 3d at 515 ("Massachusetts does not, however, impose a common-law or statutory duty on administrators to enforce university policies.").

B4685543.2

Accordingly, plaintiff's negligence claim against MIT must be dismissed.

**D.** **Plaintiff's Claim for Negligent Infliction of Emotional Distress Also Fails as a Matter of Law.**

The elements of a claim for negligent infliction of emotional distress are: (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." *Payton v. Abbott Labs*, 386 Mass. 540 (1982). Thus, "[i]n order to recover for negligently inflicted emotional distress, a plaintiff [has] to prove…negligence." *Doe v. Amherst Coll., et al*., No. 15-30097-MGM, 2017 U.S. Dist. LEXIS 28327, at *74 (D. Mass. Feb. 28, 2017).

Plaintiff's claim for negligent infliction of emotional distress should also be dismissed. First, as stated above, "when G.L. c. 214, § 1C, applies to a claim of sexual harassment, it is the exclusive remedy: plaintiffs may not proceed with other statutory or common-law actions for sexual harassment." *Lowery*, 446 Mass. at 576. Second, because plaintiff's negligence claim does not state a claim for relief (also for the reasons provided above) her claim for negligent infliction of emotional distress must also fail. *See Emerson Coll.*, 153 F. Supp. at 517 ("Because the Court has indicated that the defendants are entitled to judgment on Doe's negligence claim, her claim for negligent infliction of emotional distress must also fail."); *Ethridge v. PNC Bank, N.A.,* No. 11-12256-GAO, 2012 U.S. Dist. LEXIS 129362, at *4 (D. Mass. Sep. 11, 2012) ("In the absence of actionable negligence, there is no claim for negligently caused emotional distress."); *Delmonte v. Laidlaw Envtl. Servs., Inc.*, 46 F. Supp. 2d 89, 96 (D. Mass. 1999) (denying plaintiff's negligent infliction of emotional distress claim for lack of negligence, writing "negligence in the context of an emotional distress claim requires that the defendant have owed plaintiff a duty of care that was breached in some way").

**E.      Plaintiff's Amended Complaint Fails to State a Breach of Contract Claim Against MIT.**

In Count IX, plaintiff alleges that MIT breached a contract with her. This claim should also be dismissed. As a threshold matter, the breach of contract claim fares no better than plaintiff's other common law claims: G.L. 214, §1C is the exclusive remedy here. *Lowery*, 466 Mass. at 576 ("when G.L. c. 214, § 1C, applies to a claim of sexual harassment, it is the exclusive remedy: plaintiffs may not proceed with other statutory or common-law actions for sexual harassment."). It should be dismissed on that basis alone.

But two other reasons require dismissal. First, plaintiff has failed to allege facts sufficient to permit the Court to conclude that a contract existed at all.  Second, even if the Court were to conclude that plaintiff properly alleged that a contract existed, plaintiff has failed to allege facts establishing a breach.

*1.   Background Principles.*

As this Court explained only last year in *Doe v. Brandeis*, 177 F. Supp. 3d 561, 594 (D. Mass. 2016), "the *student*-college relationship is contractual nature" (emphasis added).

> The precise basis of the student-university contractual relationship is uncertain at best. It appears that the basic theory is that (1) a student who accepts an offer of admission to a university, enrolls, and pays tuition, and (2) a university that permits the student to enroll, thereby agree to a contractual relationship. As noted, the terms of the contract may include statements in student handbooks and registration materials.

*Id.* at n. 23 (citation omitted). And while some "courts have treated student handbooks as contracts between students and schools, the question of whether such a document always constitutes a contract is, arguably, an unsettled issue under Massachusetts law. *Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 61 n.5 (1st Cir. 2016) (citing cases). Moreover, "interpretation of a contract is ordinarily a question of law for the court." *Doe v. Brandeis*, 177 F. Supp. 3d at 594. (internal quotations omitted). Courts interpret student-

B4685543.2

university contracts by examining, objectively, the student and university's "'reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.'" *Id., quoting Schaer v. Brandeis Univ.*, 432 Mass. 474, 478 (2000). To state a claim for breach of contract under Massachusetts law, plaintiff must plausibly allege (1) there was a valid contract, (2) MIT breached its duties under the contract, and (3) the breach caused plaintiff damages. *Doe v. Trs. of Boston Coll.*, No. 15-cv-10790, 2016 U.S. Dist. LEXIS 137777, at *28 (D. Mass. Oct. 14, 2016).

   2.  *Plaintiff's Allegations.*

Plaintiff alleges that she and MIT entered into a contract and that MIT breached two contractual obligations under that contract: (1) to provide plaintiff with an educational environment free from sexual harassment, Compl. ¶ 132, and (2) to issue a certificate of mastery for successful completion of the online edX course. Compl. ¶ 133. But unlike other cases in which courts have been called on to evaluate students' contract claims against universities, plaintiff fails to point to specific provisions of MIT's policies that purportedly formed the basis of a contract between the university and her, or describe how MIT breached those policies. *Cf.*, *e.g., Doe v. Brandeis*, 177 F. Supp. 3d at 598 ("Count One of the amended complaint asserts a claim for breach of contract based on eight specific violations of the Handbook.")

   3.  *Plaintiff Fails to Allege Facts Sufficient to Conclude the Existence, or Terms, of a Contract with MIT.* [14]

No Massachusetts court (or, to MIT's knowledge, any court) has ever concluded that a contractual relationship existed between a university and a resident of a foreign country, who with some 40,000 other people, registered for a free, online course over the internet. Compl. Ex.

---

[14] Plaintiff's reliance on the implied covenant of good faith and fair dealing under Massachusetts law does not save her claim, because "[g]ood faith and fair dealing… cannot create rights and duties not otherwise provided for in the existing contractual relationship." *Trs. of Boston Coll.*, 2016 U.S. Dist. LEXIS 137777, at *29 (citations omitted).

B4685543.2

A, at 7. As this Court observed in *Doe v. Brandeis*, 177 F. Supp. 3d at 594 n. 23, the existence of a contractual relationship is premised on "a student who accepts an offer of admission to a university, enrolls, *and pays tuition.*" That is not a novel proposition: every binding contract must be supported by "valid consideration." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996). Here, plaintiff alleges a fee must be paid to receive a certificate of mastery but makes no allegation that she paid any such fee or that she gave any other consideration to MIT. Absent any allegation that she paid valid consideration, plaintiff cannot establish that she entered into a contract with MIT.

Plaintiff also fails to allege facts sufficient to describe terms of any MIT policy that purported to create a contract between MIT and her. Plaintiff alleges that MIT "had a contractual obligation to provide 'Harbi' with an educational environment free from sexual harassment by her professor" and states the obligation "was specifically contained within the policy and procedure manuals of 'MIT' governing the conduct of professors and teachers dealing with 'MIT' students." Compl. ¶ 133. But the closest plaintiff comes to a direct reference to an MIT policy purporting to form the basis for a contract appears in Compl. ¶ 12, where she refers to MIT's own investigative report. That report recites the very general statement: "MIT is committed to creating an environment in which every individual can work, study, and live without being harassed." Compl. Ex. A, at 5. Plaintiff does not—and could not—cite to any specific language suggesting that MIT's commitment created a contractual obligation with her. *See Guckenberger v. Boston Univ.*, 974 F. Supp. 106, 150 (finding that while a statement in handbooks, policy manuals, and promotional materials may form the basis of a contractual obligation between student and university, the statement must be "definite and certain so that the promisor should reasonably foresee that it will induce reliance"); *see also Schaer*, 432 Mass. at

480-81 (parties did not dispute that a contractual relationship existed, but university did not have a contractual obligation to take certain actions when policies did not include specific language requiring those actions).

### 4. *Plaintiff Fails to Allege Facts Establishing a Breach of Contract.*

Even if the Court were to conclude that plaintiff's allegations established the existence of a contract with terms definite enough to interpret, plaintiff's contract claims would still fail. Plaintiff fails to plausibly allege that MIT breached the terms of any such contract. This Court's reasoning in *Doe v. Brandeis,* 177 F. 3d. 561, shows why that is so. There, the Court took care to examine in detail the specific provisions of the Brandeis handbook plaintiff claimed Brandeis had violated and to determine whether the university had failed to meet "objectively reasonable expectation[s]" created by universities policies. *Id.* The Court reviewed the language of the policies and interpreted those polices, identifying what a student could reasonably expect from them. *Id*.

Here, to prevail (assuming the existence of a contract), plaintiff would be required to establish that, objectively, MIT's statement of principle—that MIT "is committed to creating an environment in which every individual can work, study, and live without being harassed"—was, in effect, a guarantee that no MIT employee would ever engage in any act of sexual harassment. MIT is aware of no case suggesting that so general a statement of aspiration can be transformed, as plaintiff would have it, into a guarantee. Indeed, the investigative report that plaintiff cites refers to MIT's policies concerning review of sexual harassment complaints. The fact that the policies contain procedures for investigating alleged violations makes clear that no person in plaintiff's position could reasonably expect that MIT had guaranteed an environment where no employee would break MIT's own rules.

B4685543.2

Similarly, plaintiff fails to identify any basis to claim that MIT's investigation was conducted in a way the violated any reasonable understanding she had. After plaintiff brought her complaint to MIT on October 7, 2014, MIT investigated the complaint by conducting a formal review, issuing a report with findings, and ultimately severing all ties with Lewin.[15] Plaintiff does not allege any part of the investigation deviated from MIT policy but instead concludes that MIT failed "to mitigate her damages or to provide remedial measures..." Plaintiff points to no policy requiring such measures and makes no allegations in her complaint that any such measures were practical or necessary here. Plaintiff alleges no interaction with or misconduct by Lewin even months before her complaint to MIT. The course had ended nine months prior to her report, and plaintiff states that she had already been receiving counseling services for months by that time. *See* Compl. ¶ 26.

Plaintiff's claim that MIT breached an alleged contractual obligation to issue a certificate of mastery also fails. Plaintiff alleges that MIT requires students to pay a fee for a certificate of mastery after successfully completing the course, but she does not allege that she paid for a certificate of mastery. Her allegations appear to be based on publicly available information regarding current edX courses rather than what was provided at the time of her allegations.[16] But the issue is not relevant to this Court's determinations here, because, for the reasons argued above regarding policies, offering a certificate for successful completion of a course does not

---

[15] Plaintiff alleges that MIT failed to investigate allegations regarding two other women. These allegations, however, do not plausibly state a claim that MIT breached a contractual relationship with plaintiff or that an alleged failure to investigate allegations about two other women caused harm to plaintiff. Moreover, the report did not indicate that the women had any connection to MIT, and it expressly noted the limitations of the investigation to plaintiff's complaints and stated the limitations of the report should not be interpreted as limiting MIT's actions. *See* Compl. Ex. A, at 6, n. 8.

[16] In fact, plaintiff received an Honor Code Certificate—the only type of certificate offered at the time of plaintiff's participation in the course—for successfully completing the course. https://s3.amazonaws.com/verify.edx.org/downloads/8cd523eac43e4875878b52b7aab1ad57/Certificate.pdf.

B4685543.2

create contractual obligations. Plaintiff does not cite to any "definite and certain" statements

made by MIT that would give rise to a "reasonable expectation" that MIT has failed to meet.

## IV.    CONCLUSION

      For the reasons stated above, the claims against MIT should be dismissed.

                    MASSACHUSETTS INSTITUTE OF
                    TECHNOLOGY

                    By its attorneys,

                    */s/ Martin F. Murphy*
                    Martin F. Murphy, BBO 363250
                    Jennifer A. Kirby, BBO 678885
                    Foley Hoag LLP
                    155 Seaport Boulevard
                    Boston, Massachusetts 02210-2600
                    617-832-1000
                    mmurphy@foleyhoag.com
                    jkirby@foleyhoag.com

DATED: May 12, 2017

## CERTIFICATE OF SERVICE

      I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 22nd day of May 2017. This document with "Proposed" in the title and caption was also filed through the CM/ECF system on May 12, 2017.

                    */s/ Jennifer A. Kirby*

B4685543.2