# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FAÏZA HARBI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MASSACHUSETTS INSTITUTE OF ) <br> TECHNOLOGY, and WALTER LEWIN, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. <br> 16-12394-FDS |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, J.**

This is a case alleging online sexual harassment. Plaintiff Faïza Harbi alleges, in substance, that she was sexually harassed by defendant Walter Lewin, a university professor who was teaching an online course in which she was enrolled. The complaint alleges a claim under Title IX, 20 U.S.C. § 1681, against Lewin's then-employer, Massachusetts Institute of Technology ("MIT"), as well as eight other claims under state law against Lewin and MIT.

Both defendants have filed motions to dismiss. For the following reasons, the motions will be granted in part and denied in part.

## I. Background

The facts are set forth as alleged in the complaint.

Plaintiff Faïza Harbi is a resident of Montpellier, France. (Am. Compl. ¶1). At the relevant time, she was 31 years old. (*Id.* Ex. 2 at 7).

Defendant Massachusetts Institute of Technology is a major research and teaching

university located in Cambridge, Massachusetts. (*Id.* ¶ 2). Defendant Walter Lewin, who was 77 years old at the relevant time, was retired and a professor emeritus at MIT. (*See id.* ¶ 3).

In 2012, MIT and Harvard University entered into a partnership to provide open access to courses online—commonly referred to as massive open online courses, or "MOOCs"—through an entity called "edX." (*Id.* ¶ 7). edX students who successfully completed MIT courses and demonstrated knowledge of course material were eligible to obtain "certificates of mastery" for a fee. (*Id.* ¶ 8).

One of the courses offered through edX was an MIT introductory physics course taught by Lewin. The course was entitled "For the Love of Physics" and assigned the number 8.01x. (*Id.* ¶ 7). The 8.01x course was similar to an on-campus course taught by Lewin. (*Id.*). Students enrolled in 8.01x viewed video lectures by Lewin, problem-solving sessions, and in-class demonstrations. (*Id.* Ex. 2 at 4). Students were also able to participate in interactive questions written by Lewin to help them check their understanding of the lectures. (*Id.*).

During the summer of 2013, Harbi registered for the 8.01x course for the term running from September 9, 2013, to January 15, 2014. (*Id.* ¶ 8). Approximately 40,000 people registered for the 8.01x course, and 6,000 actively took the course. (*Id.* Ex. 2 at 5).

Following her enrollment, Harbi created a Facebook group dedicated to the 8.01x course and became the administrator of that online group. (*Id.* ¶ 14). It appears that MIT had nothing to do with the creation of the Facebook group.

On November 24, 2013, Lewin initiated a request through Facebook to join the group. (*Id.* ¶ 15). Harbi received Lewin's request, but initially believed it to be a prank. (*Id.*). She responded by asking for confirmation of Lewin's identity. (*Id.*). He then sent an e-mail to her edX address confirming his identity and sharing a snapshot of her course progress, to which only

the course professor would have access. (*Id.*).

In November 2013, Lewin and Harbi began an electronic correspondence that lasted for a period of several months. They communicated over e-mail, through their Facebook pages, and eventually by video calls on Skype. (*Id.* ¶¶ 18–19). Lewin and Harbi never met one another in person; at all times, Lewin was in the United States and Harbi was in France.

Beginning in about December 2013, many of the communications between Lewin and Harbi became explicitly sexual in nature. Among other things, the complaint alleges that Lewin told Harbi that he was sexually attracted to her, he sent her nude photographs, and repeatedly masturbated on camera in front of her. (*Id.* ¶¶ 21, 24). During their communications, Harbi disclosed that she had been raped as a young child and that she had low self-esteem as a result. (*Id.* ¶¶ 23, 43). Lewin responded that he would try to help her restore her self-confidence. (*Id.*) He also told her that he planned to get her "back on the road sexually by teaching her to masturbate." (*Id.* ¶ 46).

The complaint alleges that Lewin suggested that Harbi's successful completion of the course was conditioned on their continuing correspondence. (*Id.* ¶ 23). It further alleges that Harbi did not break off the relationship for fear of being removed from the course. (*Id.*).

According to the complaint, in August 2014, Harbi realized for the first time that the correspondence with Lewin was "highly inappropriate." (*Id.* ¶ 26). As a result, she developed extreme anxiety, symptoms of post-traumatic stress disorder, became unable to sleep, and began to self-mutilate. (*Id.* ¶ 28). At some point, she was hospitalized for those symptoms. (*Id.* ¶ 26).

MIT has a written manual directed at faculty and staff members that outlines the university's policies concerning sexual harassment. (*Id.* ¶¶ 11–12). Among other things, the manual provides that "MIT is committed to creating an environment in which every individual

can work, study, and live without being harassed." (*Id.* ¶ 12). It defines "sexual harassment" as potentially consisting of "requests for sexual favors, visual displays of degrading sexual images, sexually suggestive conduct, or offensive remarks of a sexual nature." (*Id.*).

On October 7, 2014, Harbi reported Lewin's conduct to MIT. The university then initiated an investigation. (*Id.* ¶ 30). On December 2, 2014, MIT informed Harbi of the results of that investigation and provided her with a copy of the investigatory report. (*Id.* ¶ 32).

The report, which is attached to the complaint, concluded that Lewin had violated multiple MIT policies and procedures. (*Id.*). Specifically, it found that Lewin had violated MIT's policies on harassment, conflict of interest, personal conduct and responsibilities toward students, and relations with students. (*Id.* Ex. 2 at 21–23). Among other things, it recounted Lewin's statements that he had exchanged nude photographs of himself with multiple other women and had previously "taught another woman how to masturbate" through Facebook. (*Id.* Ex. 2 at 20). When asked whether his remarks concerning masturbation were appropriate, he stated that he "was raised in a Dutch culture, whereby a subject like this is openly discussed. We have a much more direct approach, which can hurt people too by the way. You, as an American, would not have thought this was appropriate. For me, it's fine." (*Id.* Ex. 2 at 9). When asked whether he would have made the same statements to a student who visited his office in person, he stated, "[i]f a student at MIT who came to me during office hours said this [referring to an e-mail from Harbi], I would have said the same thing." (*Id.*).

In response, MIT severed ties with Lewin and prohibited him from accessing university resources. (*Id.* ¶ 35). According to the complaint, the university did not offer Harbi any counseling or other remedial services. (*Id.*).

On November 23, 2016, Harbi filed the complaint in this action, alleging claims under

4

state and federal law against MIT and Lewin. Harbi filed an amended complaint on April 7, 2017. Both MIT and Lewin have filed motions to dismiss all claims for failure to state a claim upon which relief can be granted.

## II. Standard of Review

On a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). To survive a motion to dismiss, the complaint must state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III. Analysis

The complaint alleges nine counts: a violation of Title IX against MIT (Count One); negligence against MIT and Lewin, respectively (Counts Two and Three); negligent infliction of emotional distress against MIT and Lewin, respectively (Counts Four and Five); intentional infliction of emotional distress against Lewin (Count Six); assault against Lewin (Count Seven); violation of Mass. Gen. Laws ch. 214, § 1C against MIT (Count Eight); breach of contract against both MIT and Lewin (Count Nine).

### A. Alleged Title IX Violation

Count One alleges a claim for a violation of Title IX, 20 U.S.C. § 1681, against MIT. Subject to certain exceptions not applicable here, the relevant provision of Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. It is undisputed that MIT receives federal financial assistance within the meaning of the statute. MIT contends, however, that Harbi lacks standing to assert a claim under Title IX because the complaint alleges that at all times, she was a resident of France, and therefore she was never "in the United States."

A complaint alleging a violation of rights conferred by a statute must state a plausible claim both for constitutional standing and statutory standing. *See Katz v. Pershing, LLC*, 672 F.3d 64, 75 (1st Cir. 2012). The statutory standing inquiry "goes to the merits of the claim" and is properly analyzed under the standard applicable for motions to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6). *Id.* Whether a plaintiff is authorized to sue under a particular statute is a matter of "statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant under the particular statute to redress his injury." *Vander Luitgaren v. Sun Life Assur. Co. of Canada*, 765 F.3d 59, 62 (1st Cir. 2014) (quoting *Graden v. Conexant Sys. Inc.,* 496 F.3d 291, 295 (3d Cir. 2007)) (alterations omitted).

As with any question of statutory interpretation, the proper starting point is the language of the statute itself. *See Watt v. Alaska,* 451 U.S. 259, 265 (1981). Where the plain meaning of a statute is clear, "the sole function of the courts is to enforce the statute according to its terms." *Arnold v. United Parcel Serv., Inc.*, 136 F.3d 854, 858 (1st Cir. 1998) (quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)).

Under the plain language of § 1681, the protections of Title IX extend only to "person[s] in the United States." The statute is not directed to the place where the discriminatory conduct occurred, or the place where the person who engaged in the discriminatory conduct was located; it is directed to the location of the person who is protected by the statute. Here, the complaint does not allege that Harbi was "in the United States" at the time of the alleged harassment. At all relevant times, she was in France. Therefore, under the plain language of the statute, the complaint does not allege a claim under Title IX.[1]

No reported case appears to have examined the precise question at issue here: whether Title IX protects a person abroad with respect to conduct committed in the United States and transmitted over the Internet. At least two courts have, however, examined the extraterritorial application of the protections of Title IX in the context of American students traveling abroad for foreign educational experiences. *See Phillips v. St. George's Univ.*, 2007 WL 3407728 (E.D.N.Y. Nov. 15, 2007); *King v. Bd. of Control of Mich. Univ.,* 221 F. Supp. 2d 783 (E.D. Mich. 2002).

In *Phillips*, a student of a veterinary school located overseas brought a Title IX claim for sexual harassment against the school. 2007 WL 3407728, at *1. The plaintiff was studying in Grenada, and the conduct occurred entirely in that country. The court found that the "plain language of Title IX affirmatively indicates Congress's intent that the statute not apply extraterritorially," and therefore Title IX's protections did not apply. *Id.* at *4.

In *King*, students at Eastern Michigan University alleged that sexually harassing conduct

---

[1] MIT contends that such a reading is further warranted as consistent with the general principle that "legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010) (quoting *EEOC v. Arabian American Oil Co.,* 499 U.S. 244, 248 (1991)). However, such a presumption need be invoked only when a statute is silent as to extraterritorial application. Here, § 1681 explicitly provides that "person[s] in the US" are the class to which the protections of Title IX extend.

7

occurred in South Africa during a school-sponsored study-abroad trip. *See* 221 F. Supp. 2d at 784–86. The court found that the complaint stated a cognizable claim under Title IX. *See id.* at 791. The court reconciled that finding with the plain language of § 1681 by reasoning that the school's failure to remedy sexual harassment that occurred on study-abroad trips "could close educational opportunities to female students by requiring them to submit to sexual harassment in order to participate." *Id*. The court stated that "[a]s continuing students at [Eastern Michigan University], plaintiffs were 'persons in the United States' when a denial of equal access to EMU's resources, created by EMU's failure to address and stop the actions of [the alleged sexual harassers], happened." *Id*.

By contrast, the complaint here does not allege that Harbi has ever been, or will ever be, a "person in the United States." Harbi was not an American student studying overseas in France when the alleged harassment occurred; she was a French student, studying in France. Even assuming, without deciding, that the analysis of *King* is correct, even under that framework the complaint does not allege a plausible claim that Harbi was a person in the United States who has been denied equal access to education within the meaning of Title IX.

Notwithstanding the statutory language, Harbi contends that the Court should read § 1681 to apply extraterritorially in order to ensure that the purposes of Title IX are achieved. Title IX has two primary purposes: "to avoid the use of federal resources to support discriminatory practices [and] to provide individual citizens effective protection against those practices." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979). But that approach would simply read the words out of the statute. A statute's purpose, however important or laudable, cannot overcome its actual language. Again, "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it

8

according to its terms." *Dodd v. United States*, 545 U.S. 353, 359 (2005) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000)).

Title IX may well be outdated. Online learning is a relatively new phenomenon, and the statute was promulgated in 1972, in a much different technological environment. *See* An Act to Amend the Higher Education Act of 1965, PL 92-318, 86 Stat. 235 (Jun. 23, 1972), codified at 20 U.S.C. §§ 1681–1688. But this Court is not empowered to "fix" outdated statutes, no matter how worthy the goal may be. Rather, "[i]t is for Congress . . . and not for this Court, to rewrite the statute to reflect changed circumstances." *First Fed. Sav. & Loan Ass'n of Puerto Rico v. Ruiz De Jesus*, 644 F.2d 910, 914 (1st Cir. 1981) (quoting *Comtronics, Inc. v. Puerto Rico Telephone Company*, 553 F.2d 701, 707 (1st Cir. 1977)).

In summary, the plain language of § 1681 dictates that the protections of Title IX do not extend to a resident of France, who is physically present in France, with no relevant history of physical presence in the United States, and who is taking an online course over the Internet. Accordingly, Count One will be dismissed for failure to state a claim.

### B. <u>Jurisdiction</u>

Count One alleged the only federal cause of action in this case. Having dismissed that claim, it is appropriate to examine whether the Court has jurisdiction to consider the remaining state-law claims.

The amended complaint alleges that there is federal-question jurisdiction pursuant to 28 U.S.C. § 1331, as it pleads a claim arising under federal law. It further alleges that the Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367. Although the complaint does not specifically allege alienage jurisdiction, it appears that there is also federal jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), which provides that "[t]he district courts shall

9

have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . (2) citizens of a State and citizens or subjects of a foreign state . . . " (subject to an exception that does not appear to be relevant). *See also Carnero v. Boston Sci. Corp.*, 433 F.3d 1, 3 (1st Cir. 2006) (finding jurisdiction proper under 28 U.S.C. § 1332(a)(2) in a suit between a foreign plaintiff and a Massachusetts defendant).

If the power to hear this action derived solely from federal-question jurisdiction, the Court might well decline to exercise supplemental jurisdiction over the remaining state-law claims. However, as there appears to also be alienage jurisdiction, the Court will exercise its jurisdiction over those claims. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (finding that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them").

### C. Mass. Gen. Laws ch. 214, § 1C

Count Eight alleges a violation of Mass. Gen. Laws ch. 214, § 1C against MIT. MIT contends that claim is barred because plaintiff has not exhausted her claim before the Massachusetts Commission Against Discrimination ("MCAD").[2]

Mass. Gen. Laws ch. 151C defines "sexual harassment" in the educational context to

---

[2] MIT also argues that it should not be strictly liable under Mass. Gen. Laws ch. 214, § 1C for Lewin's actions. It is an unsettled question under Massachusetts law what the proper standard is for determining institutional liability for sexual harassment claims made pursuant to ch. 214, § 1C, where those claims are defined by ch. 151C. *See Morrison v. Northern Essex Community College*, 56 Mass App. Ct. at 786 n.17 (2002) ("We also do not address whether a c. 151C claim against an educational institution requires that its administrators have knowledge of harassment perpetrated by its coaches or teachers, a requirement imposed on claims under Title IX"); *see also Doe v. Bradshaw,* 203 F. Supp. 3d 168, 189 ("the Massachusetts Courts have not answered this question for either chapter 214 or chapter 151C"). The Court will adopt the approach taken in *Doe v. Bradshaw*, 2013 WL 5236110 (D. Mass. Sept. 16, 2013) and defer consideration of MIT's claim that a deliberate indifference standard, as opposed to a strict liability standard, applies here. *See Doe v. Bradshaw*, 2013 WL 5236110, at *14 (declining to address whether a deliberate indifference or strict liability standard applies to claims for sexual harassment defined by ch. 151C and brought pursuant to chapter 214, § 1C, where "a ruling on deliberate indifference will require further factual development").

include both *quid pro quo* and hostile-environment forms of harassment. Mass. Gen. Laws ch. 151C, § 1(e).[3] The plaintiff's relationship to the educational program determines how he or she may bring a claim for sexual harassment as defined by chapter 151C.

Individuals who are "seeking admission . . . to any educational institution" and students who are "enrolled . . . in a vocational training institution" may file a petition before MCAD to complain about unfair educational practices, including sexual harassment under Mass. Gen. Laws ch. 151C, § 3(a). *See Doe v. Fournier*, 851 F. Supp. 2d 207, 215 (D. Mass. 2012), *on reconsideration in part* (Mar. 20, 2012).[4] After such a student has exhausted his or her MCAD remedies, the claim is actionable in Superior Court under Mass. Gen. Laws ch. 151B, § 9.[5]

All other students claiming to be aggrieved by sexual harassment in education may bring suit under Mass. Gen. Laws ch. 214, § 1C. That statute provides as follows:

> A person shall have the right to be free from sexual harassment, as defined in [chapter 151B] and [chapter 151C]. The superior court shall have the jurisdiction to enforce this right and to award the damages and other relief provided in the third paragraph of section 9 of chapter 151B. . . . No claim under this section that is also actionable under chapter 151B or chapter 151C shall be brought in superior court unless a complaint was timely filed with the Massachusetts commission against discrimination under said chapter 151B.

Mass. Gen. Laws ch. 214, § 1C.

---

[3] The relevant provision provides in whole: "The term 'sexual harassment' means any sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when: (i) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of the provision of the benefits, privileges or placement services or as a basis for the evaluation of academic achievement; or (ii) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's education by creating an intimidating, hostile, humiliating or sexually offensive educational environment." Mass. Gen. Laws ch. 151C, § 1(e).

[4] Among other things, chapter 151C provides that "it shall be an unfair educational practice for an educational institution . . . [t]o sexually harass students in any program or course of study in any educational institution." Mass. Gen. Laws ch. 151C, § 2(g).

[5] Mass. Gen. Laws ch. 151B, § 9 provides that "[a]ny person claiming to be aggrieved by a practice made unlawful under [chapter 151B] or under [chapter 151C] . . . may . . . bring a civil action for damages or injunctive relief or both in the superior court . . . ."

Here, Harbi has brought her claim under ch. 214, § 1C. Section 1C fills a gap in the statutory scheme by "extend[ing] to employees and students protection that is not otherwise available under [chapter] 151B and [chapter] 151C; it does not duplicate the relief provided by those statutes." *Lowery v. Klemm*, 446 Mass. 572, 578 (2006). The last sentence of section 1C imposes an exhaustion requirement for claims brought thereunder that are "also actionable" under chapter 151B and chapter 151C. Again, chapter 151C provides that applicants and vocational students who allege sexual harassment must file a petition before the MCAD. All other students making such claims must bring their claims through chapter 214. Therefore the only claims that are "also actionable" under chapter 151C are those brought by applicants and vocational students. There is no exhaustion requirement for all other students, for whom chapter 214 is the only remedy. *See Doe v. Bradshaw*, 203 F. Supp. 3d 168, 190 (D. Mass. 2016).

The fact that chapter 214 imposes an exhaustion requirement for school applicants and vocational students, but not for students of non-vocational schools, obviously creates "somewhat of an anomaly." *Guzman v. Lowinger*, 422 Mass. 570, 572 (1996). But the Supreme Judicial Court has elsewhere recognized that a plain reading of the exhaustion requirement under ch. 214, § 1C may lead to anomalous results. *Id.* at 572–73 (interpreting an earlier version of ch. 214, § 1C to impose an exhaustion requirement for claims against employers with more than six employees, but not for claims against smaller employers despite the fact that it was "at a loss to perceive in the statutory framework a reasoned basis for this distinction"). Here, although it is difficult to perceive a reasoned basis for the distinction, the plain meaning of the statute controls. *Id.*

At least one court in this district has, without analysis, found an administrative exhaustion requirement for chapter 214 claims in a different statutory provision: Mass. Gen.

Laws ch. 151B, § 9. *See Harrington v. City of Attleboro*, 172 F. Supp. 3d 337, 351 (D. Mass. 2016) ("Plaintiffs must satisfy the administrative exhaustion requirement of Mass. Gen. L. c. 151B, § 9, made applicable to c. 151C under Mass. Gen. L. c. 214, § 1C."). Under Mass. Gen. Laws ch. 151B, § 9, "Any person claiming to be aggrieved by a practice made unlawful under . . . chapter [151C] . . . may, at the expiration of ninety days after the filing of a complaint with the commission, or sooner if a commissioner assents in writing, but not later than three years after the alleged unlawful practice occurred, bring a civil action for damages or injunctive relief." But the practice at issue here—sexual harassment of a student who is neither an applicant nor enrolled in a vocational school—is made unlawful under chapter 214, not chapter 151C. Although the relevant definition of sexual harassment comes from chapter 151C, the actual prohibition comes from chapter 214. Therefore, the practice is made unlawful under chapter 214, not chapter 151C. Accordingly, the exhaustion requirement in chapter 151B, § 9 does not apply to the claims at issue here.

MIT's motion to dismiss plaintiff's claims under Mass. Gen. Laws ch. 214, § 1C for failure to exhaust administrative remedies will therefore be denied.

**D.** **Breach of Contract**

Count Nine alleges a claim for breach of contract against both MIT and Lewin. In order to state a claim for breach of contract under Massachusetts law, a plaintiff must allege "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage." *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997). The elements of a valid contract include an offer, an acceptance, and an exchange of consideration. *See Vadnais v. NSK Steering Sys. Am., Inc.*, 675 F. Supp. 2d 205, 207 (D. Mass. 2009).

13

Defendants contend that the complaint does not allege that there was a valid contract, because no consideration was paid.[6] Harbi contends that although no consideration was paid, she would have had to pay a fee in order to receive a certificate from MIT. However, the complaint does not allege that a fee, or any other consideration, was actually paid. The fact that Harbi anticipated that she might later enter into an agreement to pay money in exchange for a certificate does not support a finding that consideration was paid to MIT or Lewin for any services rendered. Accordingly, the complaint fails to allege the existence of a valid contract between the parties. Count Nine will therefore be dismissed.

### E. Negligence

Counts Two and Three allege claims for negligence against MIT and Lewin, respectively. Both defendants have moved to dismiss those claims on the basis that they did not owe Harbi a legal duty.

To succeed on a claim for negligence under Massachusetts law, a plaintiff must show that (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, (3) the breach was the proximate cause of the plaintiff's injury, and (4) the plaintiff suffered actual damage or injury. *See Frappier v. Countrywide Home Loans, Inc.,* 645 F.3d 51, 58 (1st Cir. 2011). "Whether a duty of care exists is a question of law and an appropriate subject of a motion to dismiss pursuant to rule 12(b)(6)." *Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 40 (2009) (citation omitted).

#### 1. Whether MIT Owed a Duty to Harbi

Under Massachusetts law, universities owe their students a duty "to use reasonable care

---

[6] MIT also contends that the breach of contract and tort claims are barred because chapter 214, § 1C provides an exclusive remedy for claims of sexual harassment. However, that claim appears to depend on the complex interaction between Mass. Gen. Laws ch. 215, § 1C, ch. 151B, and ch. 151C. As that issue has not been thoroughly briefed by the parties, the Court will reserve judgment as to that issue.

14

to prevent injury . . . by third persons." *Mullins v. Pine Manor Coll.*, 389 Mass. 47, 54 (1983) (quoting *Carey v. New Yorker of Worcester, Inc.,* 355 Mass. 450, 452 (1969)). That duty extends only to acts by third parties that are "reasonably foreseeable" to the university. *Kavanagh v. Trustees of Boston Univ.*, 440 Mass. 195, 203 (2003). Whether an act is foreseeable "turns on an examination of all the circumstances." *Mullins*, 389 Mass. at 56.

While it is a close question, the complaint here alleges sufficient facts to support a claim that MIT had a duty to protect Harbi from sexual harassment. There is evidence in the investigatory report attached to the complaint that Lewin had previously engaged in conduct that could qualify as sexual harassment. In addition, Lewin's comments in the investigatory report evince a disturbingly casual attitude toward sexual relationships with students. Lewin apparently had no qualms about engaging in a sexual relationship with a student and appears to have made no attempts to hide that relationship from MIT. At this early stage, viewing those facts in the light most favorable to Harbi, the complaint plausibly alleges that it was reasonably foreseeable that Lewin would sexually harass a student. Whether the facts as developed in discovery support such a claim is a question for another day. Accordingly, the motion to dismiss Count Two will be denied.

### 2. <u>Whether Lewin Owed a Duty to Harbi</u>

"As a general principle of tort law, every actor has a duty to exercise reasonable care to avoid physical harm to others." *Litif v. United States*, 682 F. Supp. 2d 60, 75 (D. Mass. 2010) (quoting *Remy v. MacDonald,* 440 Mass. 675, 677 (2004)); *see also* Restatement (Third) of Torts: Phys. & Emot. Harm § 7 (2010) ("An actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm"). That duty is limited by the principle that the risk of harm must be foreseeable to the actor. *See Jupin v. Kask*, 447 Mass.

15

141, 147 (2006).

Lewin contends that there is no special relationship creating a duty between professors and students that would give rise to tort liability here. However, a special relationship between the plaintiff and the defendant is required only when the harm is caused by a third party, not when the harm is the fault of the actor against whom the claim is brought. *See Leavitt v. Brockton Hosp., Inc.*, 454 Mass. 37, 40–41 (2009). Here, the relevant duty is Lewin's general duty to refrain from conduct that creates an unreasonable risk of foreseeable harm.

The complaint alleges that Lewin had reason to know that Harbi was emotionally vulnerable, and was particularly vulnerable to sexual misconduct in light of the fact that she had been raped as a young child. The complaint alleges that Lewin used those facts to further his sexual misconduct. According to the complaint, Lewin's conduct caused Harbi significant emotional distress and resulted in her engaging in acts of self-mutilation. Those allegations are sufficient to support a plausible claim that the risk of harm to Harbi was foreseeable. Accordingly, the motion to dismiss Count Three will be denied.

### F. Assault

Count Seven alleges a claim for assault against Lewin. At the hearing on these motions, Harbi agreed to dismiss the assault claim against Lewin. Accordingly, Count Seven will be dismissed.

### G. Other Claims

The complaint otherwise appears to state a plausible claim for relief against defendants. Accordingly, the motions will be denied with respect to Counts Four, Five, and Six.

## IV. Conclusion

For the foregoing reasons, defendants' motions to dismiss are GRANTED in part and

16

DENIED in part. Specifically, the motions are granted with respect to Counts One, Seven, and Nine. The motions are otherwise denied.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: September 1, 2017